UNITED STATES (TABER v.). See Case No. 13,722.

# Case No. 16,428.

## UNITED STATES v. TAINTOR.

[11 Blatchf. 374; [1] 19 Int. Rev. Rec. 4; 1 Thomp. Nat. Bank Cas. 256.]

Circuit Court, S. D. New York. Nov. 22, 1873.

EVIDENCE — EMBEZZLEMENT BY NATIONAL BANK OFFICER.

The defendant was indicted, under the fifty-fifth section of the national banking act of June 3, 1864 (13 Stat. 116), for embezzling, abstracting, and wilfully misapplying the moneys and funds of a bank of which he was cashier, with intent to injure and defraud the bank. On the trial it was shown that he took moneys and funds of the bank, and used them in stock speculations carried on in his own name, by depositing them with a stockbroker, as margins. The defendant offered to prove that such acts of his were known to the president and some of the directors of the bank, and were sanctioned by them, and that such dealings of his with the funds of the bank were intended for the account and benefit of the bank, and were believed by him to have been sanctioned by the president and some of the directors, although there was no resolution of the board of directors authorizing or sanctioning them. The evidence was offered only to disprove the averments in the indictment, that the acts were done "with intent to injure and de-

1.[Reported by Hon. Samuel Blatchford. District Judge. and here reprinted by permission.]

fraud" the bank. The evidence was excluded. *Held*, that the evidence was properly excluded. [Cited in Reeves v. State (Ala.) 11 South. 162.]

The defendant [Frank L. Taintor] was indicted under the fifty-fifth section of the national banking act of June 3, 1864 (13 Stat. 116), for embezzling, abstracting, and wilfully misapplying the moneys and funds of the Atlantic National Bank, of which he was cashier, with intent to injure and defraud the association. The indictment contained numerous counts designed to cover numerous distinct transactions, and the several transactions were, by means of distinct counts, charged as embezzlements, abstractions, and misapplications. It was averred, in each count of the indictment, that the acts were done with intent to injure and defraud the association.

On the trial, before BENEDICT, District Judge, evidence was given to show that the defendant took moneys and funds of the bank, and used them in stock speculations carried on in his own name, by depositing the same with a stock-broker, as margins for stocks bought, or represented to have been bought, on his account, which were to be held by the broker subject to his order, so long as he kept with the broker a margin of ten per cent. The defendant offered to prove that these, his acts, were known to the president and some of the directors of the bank, and were sanctioned by them, and that all his dealings with the funds of the bank, of which evidence had been given, were intended for the account and benefit of the bank, and were believed by him to have been sanctioned by the president and some of the directors, although there was no resolution of the board of directors authorizing or sanctioning them. These offers were not made for the purpose of contradicting the proof of the commission of the acts about which testimony had been given, but only to disprove the averments in the indictment, that the acts were done with intent to injure and defraud the association.

The evidence offered by the defendant was excluded, and the suggestion being made by the court, that, in case the defendant should be advised to move for a new trial, to test the correctness of the ruling, Judges WOODRUFF and BLATCHFORD would be requested to take part in the hearing of such motion, a motion for a new trial was accordingly made and heard by the three judges.

George Bliss, U. S. Dist. Atty.

A. Oakey Hall and James C. Carter, for defendant.

Before WOODRUFF, Circuit Judge, and BLATCHFORD and BENEDICT, District Judges.

BENEDICT, District Judge. The ruling called in question upon this motion involved two propositions, namely, that the guilty intent charged in the indictment was shown by the proof of the acts done by the defendant; and, further, that the facts offered to be proved by the defendant would not, in law, avail to negative that intent. It has hardly been doubted, upon this motion, that the first of these propositions is correct. The correctness of the second is strenuously denied, and is now to be determined.

It is a general rule of law, that a man must be held to intend the necessary consequences of his acts. This rule is applicable as well to cases of crime as in civil causes, for, whatever proves intent anywhere proves it everywhere. It has often been so applied. Furthermore, in certain cases, and these criminal, the proof of guilty intent afforded by evidence of acts knowingly done has been held to be conclusive, and not overthrown by proof of any other facts; and this class of cases has not been limited to acts mala in se, nor to crimes at common law. On this argument, it was conceded, that, by virtue of the rule in question, the guilty intent is conclusively shown by proof of the act done, where the nature of the act is such that a general guilty intent is so clearly manifested thereby as to admit of no question. It appears to us, that the rule, even thus limited, covers the present case and justifies the decision made at the trial. For, the act done by the defendant was clearly unlawful, and he is precluded from denying knowledge that it was so. He was an officer of an association created under a statute which does not permit any person to make such a use of the funds of the association as was here made. Futhermore, the act of the defendant rendered the association liable to a forfeiture of its charter. Still further, it cast upon the bank a risk which attached at the instant of the doing of the act, and this a risk notoriously great, extraordinary in character, and outside the bounds of proper commercial use. It placed the capital of the bank beyond the control of the officers of the association, and it was an unlawful dealing with the money of a corporation belonging to a class of institutions whose welfare is intimately connected with the public welfare, which are liable to be depositaries of the public moneys, and which cannot justly be considered to be merely private pecuniary trusts. The act of the defendant, therefore, necessarily involved injury, not only to the association, but also, in a proper sense, to the public. An act having such characteristics, and involving such consequences, when knowingly done, discloses moral turpitude, and cannot be innocent. It may, therefore, well be held, that proof of such an act proves conclusively an intent to injure, because, when knowingly done, it affords no opportunity for justification or legal excuse, and manifests so clearly a general guilty intent as to make it of no consequence what other particular intent co-existed therewith, and to preclude enquiry as to such other in-

tent, or into the motives which impelled to its commission. A generous motive is not inconsistent with a guilty intent, and proof of the one does not disprove the other. Our opinion, therefore, is, that the circumstances offered to be.proved by the defendant would not tend to disprove the guilty intent charged in the indictment.

But it is contended that the phraseology of the statute under which the indictment is framed, requires proof of something more than the general guilty intent necessarily involved in such a misapplication of the funds of a national bank, inasmuch as it couples with the words "embezzle, abstract and wilfully misapply," the words "with intent to injure or defraud the association," and thus requires the presence of a corrupt motive, a design to cheat the association out of money, in order to constitute the offence. It is unnecessary to determine whether the latter words, as here used, are intended to be taken in connection with the words "embezzle, abstract or wilfully misapply," because this has been assumed by the prosecution, and the indictment, in each count, charges an intent to injure and defraud the association. The question presented, therefore, is as to the effect produced upon the words "embezzle, abstract or wilfully misapply," by the addition of the words "with intent to injure or defraud the association."

In considering this phraseology, it will be noticed, that, while the word "embezzle," and, perhaps, also, the word "abstract," refers to acts done for the benefit of the actor as against the bank, the word "misapply" covers acts having no relation to the pecuniary profit or advantage of the doer thereof. A design to make criminal acts done without reference to personal advantage is thus clearly disclosed, and it appears that the intention of the statute was to cover cases of unlawful dealing with the funds of the bank by its officers, although without a corrupt motive. This intention, manifested by the insertion of an emphatic and significant term in the commencement of the section, it cannot be supposed was intended to be defeated by the subsequent use of the words "with intent to injure or defraud." Nor can such effect be given these words without treating the word "injure" as synonymous with "defraud," and as referring to a misapplication for the benefit of the doer. But, if the signification of the word "defraud" be limited to a malicious dealing with property for the personal advantage of the doer—and it is not always to be so limited—the word "injure" is not of such limited application, and was doubtless inserted to cover cases of misapplication causing injury to the association without benefit to the offender. The guilty intent required by the statute would, therefore. still exist, although it be shown that no personal pecuniary benefit was anticipated by the defendant, and the requirement of the statute is fulfilled by

proof of general guilty intent involved in the act knowingly committed.

The phrase "intent to injure or defraud" is the same one used in indictments for forgery. There it refers to a general guilty intent, and such indictments are held conclusively proved when the act is proved to have been knowingly committed. The phrase should be considered to have the same meaning in this statute, and to be proved in the same way. Nor does this construction render the words nugatory. On the contrary, they are given precisely the same effect which they are held to have in indictments where their presence has been considered to be necessary. A similar effect has been given to this same phrase in other statutes. Thus Lord Chief Justice Tindal has observed, that, "where a statute directs that, to complete an offence, it must have been done with intent to injure or defraud any person, there is no occasion that any malice or ill-will should subsist against the person whose property is so destroyed. It is a malicious act in contemplation of law, when a man wilfully does that which is illegal, and which, in its necessary consequence, must injure his neighbor." 5 Car. & P. 266, note; 2 Russ. Crimes, p. 575; Com. v. Snelling, 15 Pick. 340. It is, indeed, true, that this construction of the statute under consideration imputes to the legislature the policy of making some acts criminal which may not have been before classed as crimes; and if, as it seems to be here suggested, the moral sense of the business community has become so blunted that such acts as this defendant is conceded to have committed have come to be considered "innocent or even praiseworthy," the urgent need of the adoption of such a policy affords good ground for supposing that its adoption was intended by the statute.

Our opinion, therefore, is, that no error was committed in rejecting the evidence offered by the defence upon the trial of this cause; and the motion for a new trial must, accordingly, be denied.