HORMAN v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 3, 1902.)

No. 1,066.

**1. POST OFFICE—USE OF MAILS TO DEFRAUD—SCHEME TO BLACKMAIL.**

In Rev. St. § 5480, as amended by Act March 2, 1889 (25 Stat. 873), which makes it a criminal offense if any one, "having devised or intending to devise any scheme or artifice to defraud" to be effected by the use of the mails, shall, in carrying out such scheme or artifice, have either deposited a letter or packet in a post office or taken one therefrom, the phrase "scheme or artifice to defraud" is not limited in its meaning to such as are to be accomplished by means of deception or trickery, but, bearing in mind that the purpose of the statute is to preserve the use of the mails for legitimate purposes, such phrase must be construed to include any scheme designed and intended to injure another by depriving him of his property wrongfully; and a plan to extort money from another by threatening to publish charges against him accusing him of having committed crimes, unless a sum demanded is paid, is a "scheme to defraud," within the meaning of the statute.

In Error to the District Court of the United States for the Southern District of Ohio.

Thomas H. Darby and Hiram M. Rulison, for plaintiff in error.

Sherman T. McPherson and Edward P. Moulinier, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. The plaintiff in error was indicted and convicted in the district court for a violation of section 5480 of the Revised Statutes of the United States, as amended March 2, 1889 (25 Stat. 873). Omitting provisions which are not necessary to the disposition of the pending case, this section reads as follows:

"If any person having devised or intending to devise any scheme or artifice to defraud to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the post office establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter, packet, circular, pamphlet or advertisement, in any post office, branch post office, or street or hotel letter box of the United States, to be sent or delivered by the said post office establishment, or shall take or receive any such therefrom, such person so misusing the post office establishment, shall, upon conviction, be punishable," etc.

It has been held that under this section it is essential, to work a conviction, that the government must charge in the indictment and establish in the proof: (1) That the person charged has devised a scheme or artifice to defraud; (2) that he has intended to effect this scheme by opening or intending to open correspondence with some person through the post-office establishment, or by inciting such other person to open communication with him; (3) and that in carrying out such scheme the accused has either deposited a letter or packet in the post office, or taken or received one therefrom. Stokes v. U. S., 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667.

The indictment in this case charges in substance: That the plaintiff in error and others pretended and claimed to have within their knowledge information of certain unlawful acts and crimes committed by Howard Douglass, Minnie D. Douglass, and Dr. Crank, which would tend to disgrace and degrade them, and which the accused threatened to make public and divulge to the world through newspapers and letters unless the said persons yielded and paid to the accused the sum of $7,000. That the accused did not expect or intend to furnish or exchange anything of value in consideration of the payment of the said sum of money, but threatened that, unless the same was paid, they would blacken the character and ruin the reputation of the said persons, who, through fear of said threats and exposure of said pretended crimes, practiced by this scheme of fraud, commonly called "blackmail," were expected to submit to the extortion of the said sum of money. That the scheme and artifice was devised and concocted with the intent and for the purpose of defrauding said persons out of the $7,000. That the accused, in pursuance of the said scheme and artifice, did unlawfully and knowingly, for the purpose of executing said scheme and artifice to defraud, and in order so to do, misuse the post office of the United States by depositing, placing, and causing to be deposited therein, at the post office at Cincinnati, Ohio, a letter intended to be sent, and which in fact was sent, through the mails of the United States, to one Howard Douglass. A copy of the letter is then set forth, in which the alleged threats are made, and in which the exposure is threatened unless the sum of money is paid. The second count of the indictment is like unto the first, adding the averment that the accused claimed to have information of a specific unlawful act and crime of which exposure was threatened by the accused, of which crime said person was innocent, as the accused well knew, but made such charges in an attempt to work out the scheme and artifice. A letter is set out containing the threats of exposure unless the sum of money was paid. Exception was taken to the indictment by motion to quash, by demurrer, by exception to the charge, and by motion in arrest of judgment. In these several ways it was attempted to raise the question as to the sufficiency of the indictment to charge an offense under section 5480 of the Revised Statutes. The court below was of the opinion that such an offense was charged, and overruled the objections of the plaintiff in error. These rulings constitute the principal grounds of review upon this writ of error.

The gist of the offense is the criminal use of the mails of the United States. U. S. v. Jones (C. C.) 10 Fed. 469. It is the purpose of the statute to prevent their use in aid of schemes and artifices having in view the defrauding of others of their money and property. It is claimed in behalf of the plaintiff in error that the use of the phrase "any scheme or artifice to defraud" necessarily limits the operation of the statute to such schemes or artifices as are accomplished by deception or trick adapted to defraud. It is said that only by such means can another be defrauded, within the proper meaning of the statute; that in the present indictment no deception is charged; that the persons charged knew whether the threatened exposure was of matters true or false, and hence could not be defrauded if they paid

their money for silence. The phrase "scheme or artifice to defraud" is to be construed bearing in mind the underlying purpose of the statute to preserve the use of the mails to legitimate ends. The use of the mail by sending letters to others must be in aid of the scheme designed to defraud. What is here meant by "to defraud"? Obviously the statute is dealing with the wrongful purpose to injure, with which the scheme or artifice must be connected. These words, in the phrase quoted, are not descriptive of the character of the artifice or scheme which has been devised, but rather of the wrongful purpose involved in devising the same, and putting it into operation by means of the mail. This purpose must be to injure, which doubtless may be inferred when the scheme has such effect as a necessary result of carrying it out. The terms "artifice" and "scheme" are those descriptive of the thing to be planned or devised. "Artifice" means "subtle or deceptive art in contriving; trickery; cunning; strategy; finesse; as to lure by artifice." Stand. Dict. According to the same authority, as well as the common understanding of the term, a "scheme" may be of broader meaning, and not necessarily involve trickery or cunning. A scheme may include a plan or device for the legitimate accomplishment of an object. But to come within the terms of the statute under consideration the artifice or scheme must be designed to defraud. We think, bearing in mind that the term is used to characterize the guilty purpose and wrongful intent with which the scheme or artifice has been formed by the accused, there is no difficulty in understanding the legislative purpose in using the term. The intent to defraud in other statutes is made an element of the offense. It is so in the statute (section 5209) punishing embezzlement and misapplication of the funds of a national bank. The acts are required to be done with intent to injure or defraud, as distinguished from an innocent purpose in the doing of the same. We think the term in this statute, as in that, is intended to define the wrongful purpose of injuring another, which must accompany the thing done to make it criminal within the meaning of the statute. This was the view taken of the phrase of section 5209 in U. S. v. Taintor, 11 Blatchf. 374, Fed. Cas. No. 16,428, in which Judge Benedict said:

"The phrase 'intent to injure or defraud' is the same one used in indictments for forgery. There it refers to a general guilty intent, and such indictments are held conclusively proved when the act is proved to have been knowingly committed. The phrase should be considered to have the same meaning in this statute, and to be proved in the same way. Nor does this construction render the words nugatory. On the contrary, they are given precisely the same effect which they are held to have in indictments where their presence has been considered to be necessary. A similar effect has been given to this same phrase in other statutes. Thus Lord Chief Justice Tindal has observed that: 'Where a statute directs that, to complete an offense, it must have been with intent to injure or defraud any person, there is no occasion that any malice or ill will should subsist against the person whose property is so destroyed. It is a malicious act, in contemplation of law, when a man willfully does that which is illegal, and which, in its necessary consequence, must injure his neighbor.' 5 Car. & P. 266, note; 2 Russ. Crimes, p. 575; Com. v. Snelling, 15 Pick. 340."

We think this reasoning is applicable here. If the scheme or artifice in its necessary consequence is one which is calculated to injure an-

other, to deprive him of his property wrongfully, then it is to defraud within the meaning of the statute. As was said of this section in Durland v. U. S., 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709, "it includes everything designed to defraud by representations as to the past or present, or by suggestions or promises as to the future." This is an instructive case in the interpretation of this statute. The sufficiency of the indictment was under consideration. The scheme described involved promises as to future gain to result from certain investment bonds. It was argued by counsel that this section of the statute covered only such cases as at common law came within the definition of false pretenses. But the supreme court held that the statute had a broader meaning. In passing upon the case Mr. Justice Brewer said:

"The significant fact is the intent and purpose. The question presented by this indictment to the jury was not, as counsel insist, whether the business scheme suggested in this bond was practicable or not. If the testimony had shown that this Provident Company, and the defendant, as its president, had entered in good faith upon that business, believing that out of the moneys received they could, by investment or otherwise, make enough to justify the promised returns, no conviction should be sustained, no matter how visionary might seem the scheme. The charge is that in putting forth this scheme it was not the intent of the defendant to make an honest effort for its success, but that he resorted to this form and pretense of a bond without a thought that he or the company would ever make good its promises. It was with the purpose of protecting the public against all such intentional efforts to despoil, and to prevent the post office from being used to carry them into effect, that this statute was passed; and it would strip it of value to confine it to such cases as disclose an actual misrepresentation as to some existing fact, and to exclude those in which is only the allurement of a specious and glittering promise."

Weeber v. U. S., 62 Fed. 740, decided at the circuit by Mr. Justice Brewer, Judges Caldwell and Sanborn concurring, is in harmony with the conclusion we have reached. In that case the defendant had in his hands a claim for collection in favor of one Kearney against Stephens. Stephens was the defendant in a suit before the United States court for the recovery of money alleged to be due for timber taken from government lands. The defendant, Weeber, in aid of his purpose to collect the spurious claim, sent a letter through the mails purporting to be from the district attorney as to furnishing testimony against Stephens in the timber suit. The intention being (to quote Mr. Justice Brewer's words) "that Stephens would be frightened—blackmailed—into paying the claim of Kearney, in defendant's hands for collection, in order to prevent disclosures by defendant to the United States district attorney." The learned justice characterizes the purpose to collect the unfounded claim as a fraudulent scheme within the statute, and says:

"The criminality of the defendant does not rest upon the probabilities of the success of the scheme, or upon the fact of success, nor is it avoided by the fact that the act of using the mails is only one step in a series of acts intended to accomplish the fraudulent scheme. It is enough that the defendant, having devised a scheme to defraud, in the execution of that scheme, and as a necessary or convenient step in the execution thereof, transmits through the post office a letter used, or designed to be used, for the purpose of carrying that scheme into effect."

If the attempt to collect a fictitious debt is a fraudulent scheme within the terms of this law, we can see no room to question that a

scheme to require another to pay a large sum of money, or be published to the world as guilty of grave crimes and offenses, is less so.

The case of Milby v. U. S. (decided by this court at the October term, 1901) 48 C. C. A. 574, 109 Fed. 638, did not involve the question now before us. In that case the letter sent contained simply a proposal to send counterfeit money, without averment that it would not be sent as proposed, or that it was intended to defraud others than the one to whom the proposal was made. It was held that no scheme to defraud was described within the meaning of the statute.

Nor does the interpretation given the term "to defraud" do violence to the lexical meaning of the expression. While it is true that fraud generally implies artifice or deception, one may be defrauded of his property when he has been wrongfully deprived thereof. To "deprive of something dishonestly" is to defraud. Stand. Dict. It is not uncommon to speak of one as defrauded of his rights who has been wrongfully deprived of them by other means than chicane or trickery. The reward justly due one for services may be withheld, and in that sense he is defrauded. "To withhold wrongfully from another what is due to him is to defraud." Webst. Dict. "To defraud implies or includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence generally imposed, and are injurious to another, or by which an undue and unconscionable advantage is taken of another." 9 Am. & Eng. Enc. Law (2d Ed.) p. 180.

Applying the principles which we have undertaken to state to the charge in the indictment before us, we have no doubt it describes a scheme to defraud within the meaning of the section. The scheme is set forth to ruin and blacken the reputation and character of others by accusation of heinous offenses and misdeeds. That this scheme was not innocent, but intended for a wrongful purpose,—"to defraud," in the language of the statute,—is shown in the charge that these alleged crimes were to be published to the world in default of the payment of a large sum of money to the accused. In other words, these persons were to be despoiled of their money unless they paid for silence as to accusations which, if believed, would ruin their character and standing. We think the court below did not err in holding the indictment to sufficiently charge an offense within the statute.

Other errors are assigned. We have carefully examined them, and find no error in the rulings to the prejudice of the accused.

Judgment affirmed.