## WALKER v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 11, 1907.)

No. 1,327.

**1. POST OFFICE—USING MAILS TO DEFRAUD—INDICTMENT.**

The concluding clause of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3697], which provides that in prosecutions thereunder for using the mails to defraud, the indictment may charge offenses to the number of three when committed within the same six calendar months, but the court thereupon shall give a single sentence, has no relation to the offense which is fully defined elsewhere in the section, but relates to the mode of procedure only; and an indictment containing more than three counts, each charging a violation of the section, is not for that reason fatally defective, where no demurrer or other objection was taken thereto in the trial court and only a single sentence was given thereon.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Post Office, § 72.]

**2. SAME—ELEMENTS OF OFFENSE—SCHEME TO DEFRAUD.**

The issuance of certificates in the name of a company by which the holder paid in $1 per month, and on maturity of his certificate in its turn was entitled to receive double the amount paid in from a "mutual benefit credit fund" created solely by the payment into it of less than 75 per cent. of the amounts paid in, *held* to be a scheme to defraud, which when carried on by means of the post office department was in violation of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3697].

**3. SAME—EVIDENCE—LETTERS.**

On the trial of a defendant charged under Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3697], with using the mails to carry out a scheme to defraud, letters shown to have been mailed or received by defendant need not be effective to forward such scheme to render them admissible in evidence, but it is sufficient if it appears therefrom that they were intended to be utilized in some way in connection with it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Post Office, § 85.]

**4. SAME—PROOF OF INTENT.**

In a prosecution under Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3697], for using the mails in conducting a scheme to defraud, it is not necessary to prove a specific intent to defraud, where such intent is manifest from the nature of the scheme itself.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington.

The plaintiff in error (defendant below) was indicted for having knowingly, willfully, and falsely devised a scheme and artifice to defraud, which scheme and artifice was to be effected through and by means of the post office establishment of the United States, contrary to section 5480 of the Revised Statutes [U. S. Comp. St. 1901, p. 3697]. The scheme consisted in the issuance of a certificate to the purchaser by the Cumulative Credit Company, by which the holder agreed to pay and contribute the amount of $1 per week to the company, for the purpose of creating an expense credit fund and a mutual benefit credit fund for the uses and purposes therein provided. By a stipulation of the certificate the company agreed to set aside 75 per cent. of the sixth to the hundredth payments, inclusive, and 90 per cent. of all payments thereafter, and to place the same in the mutual benefit credit fund, from

which were to be paid the amounts due on the certificates as they severally matured. It was provided that the certificates should be deemed to be matured when, at any time after 50 weeks from the date thereof, all like certificates of prior date and number should have been matured and canceled; that at its maturity the owner thereof, upon presentation and surrender to the company of the certificate, should be paid by the company from the mutual benefit credit fund the sum designated in the maturity table on the back thereof and in accordance with the conditions contained in such table, provided there should be sufficient money in the mutual benefit credit fund available for that purpose. By a further stipulation it was agreed that the certificate was one of a continuous series of like certificates, in all of which the obligations of and the benefits to the several owners thereof were mutual with the owner of such certificate, and in which the compensation to and the duties of the company were identical with its compensation and duties therein provided; that the certificate constituted a mutual agreement between the owner thereof and all of the owners of like certificates; and that the time and manner of payments therein and in such other certificates provided for was the essence of the agreement. The table referred to is styled "Maturity Table," and purports to show the amount returnable at maturity of the certificate at different weekly maturity periods, as follows:

| "If Matured in | Amount Paid in. | Maturity Value. |
|---|---|---|
| 50 weeks | $50.00 | $100.00 |
| 51 weeks | 51.00 | 102.00" |

—and so on in uniform increase to

| "99 weeks | 99.00 | 198.00 |
|---|---|---|
| 100 weeks or over | | 200.00." |

As a part of the same scheme, it is alleged that the defendant issued divers and sundry circulars, whereby it was represented, in effect, that money so invested was without the possibility of loss, that the certificates had formerly matured in from 42 to 72 weeks, that they would mature in about 60 weeks, that they had been maturing in less than a year, and that future maturities would be more rapid.

The indictment contains four counts, by the first of which the defendant is accused of having, through and by means of said scheme and artifice, and through and by means of the post office establishment of the United States, received from such post office establishment a letter, contained in an envelope directed to Mr. T. P. Miller, and signed M. Langguth. The second count is for receiving, under like circumstances and conditions, a letter contained in an envelope directed as above, and signed Orlando K. Fitzsimmons; the third, for receiving a letter to the same address, and signed Paul J. Edmeston; and the fourth is for employing a fictitious name and address, to wit, T. P. Miller, that not being the true name of the defendant.

After trial, a verdict was returned finding the defendant guilty as charged, and the court rendered a single judgment thereon. The case comes here on the bill of exceptions.

Walter R. Bacon, for plaintiff in error.
P. C. Sullivan, U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts). The first error assigned relates to the trial under the indictment, by reason of its containing four counts. It is provided by the last clause of section 5480 [U. S. Comp. St. 1901, p. 3697], that:

"The indictment, information, or complaint may severally charge offenses to the number of three when committed within the same six calendar months; but the court thereupon shall give a single sentence, and shall proportion the punishment especially to the degree in which the abuse of the post office es-

tablishment enters as an instrument into such fraudulent scheme and device."

And it is insisted that the injunction of the statute in this regard is jurisdictional. No demurrer was interposed to the indictment, and the question is now raised here for the first time. By a survey of the statute it will be seen that the offense denounced against is created and perfectly and completely defined without any reference to the clause above recited. In other words, the clause does not perform any part of the function of defining or prescribing what shall constitute the offense, and an elimination of the clause will allow the offense to remain intact. What, then, is the purpose of such provision? It can only be to prescribe the mode of procedure in such cases, so that there is a distinction to be held between the defining or creating of the offense and the prescribing of the procedure whereby it shall be prosecuted. The contention, therefore, that the matter of combining more than three offenses in one indictment is jurisdictional, is without merit. This position has been judicially determined in the case of the United States v. Nye (C. C.) 4 Fed. 888.

Later cases have been decided, not involving the identical question, but so closely analogous that they may be deemed authoritative. In the case of Ex parte Henry, 123 U. S. 372, 8 Sup. Ct. 142, 31 L. Ed. 174, which came up on habeas corpus, the petitioner was indicted for a violation of this statute, charged by three separate and distinct counts of three offenses, and was convicted. At a subsequent term he was accused of three other and different offenses by as many counts contained in one indictment. All these offenses were committed within the same six calendar months. He was convicted under the last indictment, and the habeas corpus proceeding was to determine the legality of the conviction. It was contended that there could be but one punishment for all the offenses committed within the six calendar months; but the court ruled that they did not constitute a continuous and therefore a single offense, and that in general effect the provision alluded to "is not materially different from that of section 1024 of the Revised Statutes [U. S. Comp. St. 1901, p. 720], which allows the joinder in one indictment of charges against a person 'for two or more acts or transactions of the same class of crimes or offenses,' and the consolidation of two or more indictments found in such cases. Under the present statute three separate offenses committed in the same six months may be joined, but not more, and when joined there is to be a single sentence for all. That is the whole scope and meaning of the provision, and there is nothing whatever in it to indicate an intention to make a single continuous offense, and punishable only as such, out of what, without it, would have been several distinct offenses, each complete in itself." It will be borne in mind that here was a second indictment by three counts upon which the defendant was a second time convicted, thus permitting the indictment for six offenses committed within the six calendar months, but under two indictments containing three counts each. In another case in the Court of Appeals for the Sixth Circuit (Howard v. United States, 75 Fed. 986, 21 C. C. A. 586, 34 L. R. A. 509) it is distinctly said:

"It was entirely competent, according to the Henry Case, to charge the petitioner with 24 separate offenses committed within the same six calendar months in eight separate indictments containing three counts each; and upon conviction the court might pronounce eight sentences, one on each indictment, just as was done in the case at bar, and the judgments would be neither erroneous nor void." .

These cases emphasize the idea that this clause in the statute is only meant for the regulation of the practice, or to prescribe the mode of procedure. Being for that purpose, it was competent, as was done in the case of United States v. Nye, supra, for the prosecuting attorney to nolle one count out of four comprised in the indictment, and proceed to trial upon the other three. No exception having been taken to the form of the indictment in the court below, it is now too late to be heard with reference to it. The first error is, therefore, not well assigned.

It is next insisted that the scheme shows upon its face that it was not one designed for defrauding. But we think that the certificate, when viewed in connection with the further allegations of the indictment, touching the representations as to the investment and the time when it would mature, was well designed and calculated to entrap, and thereby to defraud, the unwary. The scheme is fairly well described by the defendant himself in his admissions to C. L. Wayland, the post office insp:      -      That officer says that he (defendant) explained that the Cumulative Credit Company sold certificates at the cost of $1 a week to the certificate purchaser, and that they agreed at the maturity of the certificate, which he said had never exceeded at that time 42 weeks, to pay back twice the amount paid in; that they set aside after the first five payments 70 per cent. of the total amount received for maturity refunding, and 25 per cent. they retained for the expense fund; that they did not invest the maturity fund, and had no income whatever except what they got from outsiders; and that they expected to make the money out of the people that lapsed payment—forfeited what they had paid in. It should be further stated that the certificate contained a provision that the first five payments should be made weekly, and if any default occurred therein, the payments should be forfeited, unless the purchaser complied with other conditions which would reinstate him. This is the only provision contained in the certificate for any forfeiture, and the only source from which it was expected that the company would be able to pay the large margin of profit as represented. That such a device or contrivance is wholly impracticable is at once manifest. It must be true, therefore, in view of all the conditions, that the defendant had no expectation of repaying anything that should be paid in upon such certificates, or that they should ever mature under the terms and conditions thereof, so as to entitle the purchaser to the payment of the amount stipulated to be returned. So we say that the scheme was, on its face and in the light of the charges of the indictment, a fraudulent one. See Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709.

The next assignment of error relates to the introduction of certain letters, one each under the first, second, and third counts. It is com-

plained that none of these letters appear from their reading to have any reference to or connection with the scheme to defraud. All the letters are addressed to Walker, and were conveyed in envelopes addressed "Mr. T. B. Miller." The first and last indicate that they have relation with the scheme, although perhaps remotely. The second is very brief. It simply says: "I desire very much to get into communication with Mr. Denham. Can you tell me how I can reach him by letter?" This text by itself shows nothing of a purpose of furthering the contrivance. The letter, however, appears to have been written upon paper containing a letter head representing the incorporation of the Cumulative Credit Company, giving the names of the president, secretary, and treasurer, and the attorney, and the home offices of the company in Los Angeles and San Francisco. It would, therefore, seem that all these letters were intended in some way to be utilized in connection with the scheme and artifice set up in the indictment. But it was not necessary that this purpose should be shown by the letters absolutely, and it was so held in the case of Durland v. United States, supra. Mr. Justice Brewer, in the course of his opinion in that case, has this to say upon the subject:

"We do not wish to be understood as intimating that in order to constitute the offense it must be shown that the letters so mailed were of a nature calculated to be effective in carrying out the fraudulent scheme. It is enough if, having devised a scheme to defraud, the defendant with a view to executing it deposits in the post office letters which he thinks may assist in carrying it into effect, although in the judgment of the jury they may be absolutely ineffective therefor."

The letters were, therefore, competent to go to the jury, and the ruling of the court complained against was not error.

It is further insisted that there was no intent to defraud shown, looking throughout the whole testimony given in the case, which has been brought up in the record. It is entirely clear, however, that the intent is patent when the scheme itself is understood, and that it was unnecessary that it be further shown by the admissions, or the express assertions, of the defendant himself as to what his purpose was in devising the artifice or scheme, and in working in pursuance thereof.

These considerations lead to the affirmance of the judgment of the trial court, and it is so ordered.