GOLDMAN v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. February 2, 1915.)

No. 2498.

1. POST OFFICE ⊙⪻35—OFFENSES AGAINST POSTAL LAWS—USE OF MAILS TO DEFRAUD.

Under Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1130 (Comp. St. 1913, § 10385), providing that whoever, having devised or intending to devise any scheme or artifice to defraud, shall, for the purpose of executing such scheme, or attempting so to do, place any letter, etc., in any post office, etc., or take or receive any such therefrom, shall be punished as therein provided, where accused devised a scheme whereby he was to advertise for a woman to assist him on a financial proposition, and, having found a satisfactory assistant, men of standing and position were to be induced to visit her for social or business purposes, and, if possible, take a compromising position with her, whereupon photographs were to be taken and used in extorting money, it was not essential to the completeness of the scheme that an agreement should first be made as to the names of the men and the ways and means to be adopted to influence them as desired; and hence an indictment alleging that accused planned that, when he found such a person as he desired, he would agree and arrange with her that she should devise ways and means to meet and become acquainted with men of high financial and social standing, was not insufficient, as showing that there was no scheme to defraud, but only a preparation to devise such a scheme.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig. ⊙⪻35.]

---

⊙⪻For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. POST OFFICE ⬤⇒48—OFFENSES AGAINST POSTAL LAWS—INDICTMENT—SUF-
FICIENCY.

Where the indictment distinctly alleged that, for 'the purpose of ex-
ecuting such scheme, accused unlawfully received and took letters in an-
swer to such advertisement from a post office box, it was not insufficient,
as showing that the act of receiving. the letters was a step in devising
'the scheme, and not for the purpose of executing it.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec.
Dig. ⬤⇒48.

Nonmailable matter, see notes to Timmons v. United States, 30 C. C.
A. 79; McCarthy v. United States, 110 C. C. A. 548.]

3. CRIMINAL LAW ⬤⇒901—MOTION FOR DIRECTED VERDICT—WAIVER.

Accused waived any error in denying a motion to direct a verdict in
his favor at the close of the evidence for the prosecution by introducing
evidence.

· [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2124; Dec.
Dig. ⬤⇒901.]

4. POST OFFICE ⬤⇒49—OFFENSES AGAINST POSTAL LAWS—SUFFICIENCY OF ·
EVIDENCE.

Where the evidence showed that accused, in advertising for a person
to assist him in a scheme to defraud, requested persons answering the ad-
vertisement to write to him for a personal interview, and gave no address
except a post office box, and that he took from such box letters so ad-
dressed, and it did not appear that this method of correspondence ever
happened in any other transaction, or that he ever received a letter so. ad-
dressed, except in connection with the particular scheme, it showed, not-
withstanding his lack of knowledge of the contents of the letters, that he
received and took them from the post office for the purpose of executing
or attempting to execute such scheme.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec.
Dig. ⬤⇒49.]

5. POST OFFICE ⬤⇒35—OFFENSES AGAINST POSTAL LAWS—DECOY LETTERS.

That letters taken by accused from a post office box for the purpose of
executing or attempting to execute a scheme to defraud were written at
the instance of a post office inspector, at whose request the superintend-
ent of the post office station notified accused that the letters were there,
did not render the act of taking and receiving them any less an offense,
if the postal officials adopted and pursued this course upon reasonable
grounds to suspect accused of misusing the mails, in an effort to detect,
and not to induce the commission of, a crime.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig.
⬤⇒35.]

6. POST OFFICE ⬤⇒49—OFFENSES AGAINST POSTAL LAWS—SUFFICIENCY OF
EVIDENCE.

On a trial for receiving and taking letters from a post office for the
purpose of executing or attempting to execute a scheme to defraud, evi-
dence *held* to show that the letters written at the instance of a post of-
fice inspector were so written in an effort to detect, and not in an effort
to induce the commission of, a crime.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86; Dec.
Dig. ⬤⇒49.]

In Error to the District Court of the United States for the Eastern
Division òf the Northern District of Ohio; William L. Day, Judge.

Jacob L. ·Goldman was convicted of a misuse of the mails, and he
brings error. Affirmed.

For opinion below on demurrer to the indictment and motion to
quash, see United States v. Goldman, 207 Fed. 1002.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This writ is prosecuted to reverse sentence entered upon conviction for misuse of the mails. The indictment contains two counts, and they in effect are the same, except that one of the two letters involved appears in the first count and the other in the second. The indictment enters greatly into details and is very long. We think the following fairly states the substance of its allegations:

Goldman unlawfully devised a scheme to defraud divers men of "reputed high financial standing and position in and about said city of Cleveland," but whose names were unknown to the grand jury. He planned to effect the scheme by inducing women to enter into correspondence with him through letters to be mailed by them in the post office establishment in that city, and to this end to advertise in the Cleveland Tribune as follows:

"Desire—The assistance and co-operation of a well-educated and well-groomed lady on a big financial proposition. Must be good looking, chic, and have the ability to interest men of means. If you can measure up to this standard, write me for personal interview. Box 14, Station D."

That upon receiving such letters he would arrange for personal interviews with the writers and select one of them to carry out his purposes; that he intended to have this woman "devise ways and means" to induce men of standing and position, upon pretense of friendly and social relations or of legitimate business, to visit her in some hotel or apartment house to be selected in Cleveland; that a suite of rooms would there be engaged and so equipped with two cameras as to secure photographs of the woman and her visitor in one of these rooms, without the knowledge of the visitor; that the woman should induce her visitor if she could to take a "compromising position with her," when Goldman would take or cause to be taken two photographs showing the woman and the visitor in such compromising position, but "from different views"; that Goldman would then enter the room, advise the man of the taking of only one of the photographs, and threaten to expose him unless he would pay $50,000 to $75,000 either for the photograph or for destroying it, but would retain the other for the purpose of silencing the man in case he paid the money and caused trouble later; that the scheme involved men who were not indebted to Goldman, and that the fraud would consist in so extorting money from them. Whatever moneys should be obtained were, as part of the scheme, to be divided between Goldman and the woman.

It is charged that in execution of the scheme Goldman caused the advertisement before quoted to be inserted in the issue of the Cleveland Tribune for January 4, 1913; that on the 9th of that month he knowingly took and received from the post office box before described a certain letter contained in a sealed envelope which bore an uncanceled two-cent stamp and this address, "P. O. Box 14, Station D, Cleveland," and which had theretofore been deposited in answer to such advertisement in the post office establishment for mailing and delivery. The letter as set out in the first count bears the signature and address of the writer, and reads:

"Dear Sir: In answer to your ad. in the 'Tribune' of January 4th, I should like to have an interview with you. You ask for a well-educated and well-groomed lady to help you on a big financial proposition. The ad. interests me and I should like to talk to you about it."

The letter described in the second count was also inclosed in an envelope bearing a two-cent uncanceled stamp and an address the same as the other letter. The letter bears the signature and address of the writer, a woman other than the first writer, and reads:

"Box 14, Station D, Cleveland, O. I have read your advertisement in 'The Tribune' of the 4th, in which you desire assistance and co-operation of a lady, on a big financial proposition. I think I can fill the position satisfactorily. Please write me when and where I can see you."

Goldman also took this letter from the box at the same time he received the other. Goldman was thereupon arrested, the letters were found upon his person, and nothing further was done toward executing the scheme.

A demurrer and a motion to quash were filed and overruled, and thereupon the accused entered a plea of not guilty. At the close of the evidence

for the prosecution the accused moved the court to direct a verdict in his favor, which was overruled; but no such motion was made at the close of all the evidence.

F. J. Wing and F. W. Walther, both of Cleveland; Ohio, for plaintiff in error.

C. R. Alburn, Asst. U. S. Atty., of Cleveland, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] 1. The ground alleged in the demurrer is insufficiency in law of either count of the indictment; and this is explained in argument to mean that the scheme to defraud as it is alleged was "but a preparation to devise a scheme," and so did not fall within the language of section 215 of the Federal Criminal Code. Reliance is placed, for example, on this portion of the indictment:

"Goldman had planned, devised, and intended that, when he should find a person * * * of the description indicated" in his advertisement, "he would agree and arrange with her in this: That she should devise ways and means through pretended business engagements, and through ways to the grand jurors unknown, to meet and become acquainted with certain and divers persons, men, of reputed high financial and social standing and position, but whose names are to the grand jurors unknown. * * *"

Counsel fail to discriminate between language employed to set forth Goldman's scheme and that used to describe the means he selected for its execution. Goldman's scheme, as it is alleged, consisted of a methodical course of procedure down to the very point of extorting money from his intended victims; and the woman was but an instrumentality designed to be used in ways pointed out in material part in the scheme itself, as well as through ways and means the woman herself should devise, to entice men to her room and into "compromising" positions for the purposes appearing in the statement. The scheme in part required the woman to become acquainted with men of "reputed high financial and social standing and position"; and to say it was essential to the completeness of the scheme that an agreement should first be made as to the names of men and the ways and means to be adopted to influence them as desired is to overlook the main features and ultimate purpose of the scheme, and to subordinate it to incidental conditions which plainly could arise only in the course of its execution.

[2] The motion to quash presents a kindred question. It is addressed to both counts of the indictment and in the main for the same reasons. The complaint is that neither count states that the use made of the postal establishment in taking the letters from the post office was for the purpose of executing the scheme, but that the letters themselves show that the acts of receiving them were steps taken in devising the scheme. This is but another effort to show that there was not a completed scheme, though for a reason different from that urged under the demurrer. The complete answer to this is to be found in the indictment. It is there distinctly alleged that for the purpose of

executing the scheme, Goldman, on January 9, 1913, did unlawfully take and receive the two letters from Box 14 of Station D of the post office establishment at Cleveland.

We may here allude to a criticism of the indictment which counsel made in support of both the demurrer and the motion to quash. They contend:

"The vice of an indictment of this character arises from the attempt of the pleader to broaden the scope of the statute by broadening his description of the scheme, so as to include therein uses of the mails which in their nature could not be acts done for the purpose of executing the scheme to defraud, contemplated by the statute, although within the scheme as described by the pleading."

This is either an assumption that the scheme alleged could not in the nature of things have been devised in advance of advertising for and receiving the letters, or it is a challenge of the right, as also of the duty, of a pleader to employ allegations according to his understanding of the facts. It certainly is conceivable that Goldman might have thought out and finished his scheme of extortion in advance of securing and setting in motion the instrumentalities, like the use of the mails, designed for its execution; and so counsel's criticism should be addressed to the proofs and not the allegations. The demurrer and motion were rightly overruled.

[3, 4] 2. Counsel next contend that it was error to deny the motion to direct a verdict in favor of defendant, for the reason that the evidence of the government was "insufficient to support the necessary allegations of the indictment." While it would be enough to say of the error so claimed that it was waived by the introduction of evidence for the defendant (Sandals v. United States, 213 Fed. 571, 573 [C. C. A. 6th Cir.], and citations), we are disposed to consider the contention made against the sufficiency of certain features of the evidence. Counsel recognize the change made in elements of the offense defined by section 215 (construed in United States v. Young, 232 U. S. 155, 161, 34 Sup. Ct. 303, 58 L. Ed. 548), as compared with the offense denounced by old section 5480 (interpreted by this court in Horman v. United States, 116 Fed. 350, 53 C. C. A. 570) and the resulting modification in the form of indictment as now required; but they insist that the evidence is lacking even in tendency to show one of the elements of the offense as now defined (section 215), since it fails to show a *purpose* in Goldman, when receiving the two letters, to execute or to attempt to execute his scheme. It is said the acts of receiving letters are to be differentiated from those of preparing and mailing letters; the theory being that lack of knowledge of the character and contents of letters received forbids imputing the element of purpose in the one instance, while this cannot be said in the other.

The difficulty with this contention and theory is that they do not fit this case. The evidence shows that Goldman himself placed the original of the advertisement (set out in the statement) in the office of the Cleveland Tribune with direction to publish it; and it is to be observed that the advertisement contained an express request to the class of persons addressed to write to him for a personal inter-

view, and also this significant address, "Box 14, Station D." His name did not appear in the advertisement, and the envelopes containing the letters bore only the address, "Box 14, Station D, Cleveland." It is not claimed that this method of correspondence ever happened in any other transaction of Goldman, or that he ever received a letter so addressed, except in connection with this particular scheme. In these circumstances it was but natural for him to expect to receive letters so addressed and relating to the subject of his advertisement. He could not rationally have mistaken their character. Whether he would take them from his post office box or not was optional with him; he might have refused either to take or receive them; the address on each was to him an unmistakable warning. The act of Congress forbade him to "take or receive any such" letter from "the post office establishment" (section 215); and to hold that the record does not tend to prove the element of forbidden purpose in his receipt of the letters, would be to frustrate the evidence and also the statute itself.

[5, 6] 3. There is another objection to these letters which is deserving of attention. The letters were decoys and were written at the instance of a post office inspector. The writer of the first letter was not in the employ of the government, though the writer of the other was. The letters bore the address called for in the advertisement, were duly stamped, and the inspector placed them in Box 14, Station D. The superintendent of the station, pursuant to request of the inspector, notified Goldman by telephone that two letters were there. Goldman then went to the post office and took the letters from the box, opened and read them, and as one of the witnesses said "was in the act of tearing up the envelopes" when the officer arrested him. If these officials adopted and pursued this course upon reasonable grounds to suspect Goldman of misusing the mails, their conduct was, under well-settled principles, justifiable, and the offense was committed; if no such grounds existed, neither their course nor the conviction can be sanctioned. United States v. Wight (D. C.) 38 Fed. 106, 109, per Brown and Jackson, JJ.; Grimm v. United States, 156 U. S. 604, 609, 610, 15 Sup. Ct. 470, 39 L. Ed. 550; Goode v. United States, 159 U. S. 663, 669, 16 Sup. Ct. 136, 40 L. Ed. 297; Rosen v. United States, 161 U. S. 29, 42, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Montgomery v. United States, 162 U. S. 410, 411, 16 Sup. Ct. 797, 40 L. Ed. 1020; Andrews v. United States, 162 U. S. 420, 423, 16 Sup. Ct. 798, 40 L. Ed. 1023; Price v. United States, 165 U. S. 311, 315, 17 Sup. Ct. 366, 41 L. Ed. 727; Hall v. United States, 168 U. S. 632, 637, 18 Sup. Ct. 237, 42 L. Ed. 607; Scott v. United States, 172 U. S. 343, 349, 350, 19 Sup. Ct. 209, 43 L. Ed. 471; Bates v. United States (C. C.) 10 Fed. 92, 94, 95, per Drummond, C. J.

The evidence tends to justify the course taken by the post office officials; in other words, it seems to have been an effort to detect, and not to induce commission of, a crime. In the interval between the publication of Goldman's advertisement and the preparation of the letters, the inspector had been told of Goldman's purposes. During

that interval the woman who wrote the first letter set out in the statement had conversed with Goldman on the subject of his scheme, and he had told her just what it was. This occurred for the most part in the presence of a third person, a man, and the man and woman testified at the trial, without objection, that Goldman told them that he had received 10 or 12 letters in answer to his advertisement, though Goldman testified that he had said they were applications, not letters. It was from the man, who was present at the interview, that the inspector received his information. In view, then, of the verdict, we cannot say that Goldman's acts of taking and receiving the two letters in issue were any the less an offense because of the fictitious character of the letters. It was not necessary, in order to establish the offense, to show that the nature of the letters so received was such as effectively to aid in working out Goldman's scheme. It was enough if, having devised his scheme, he received the letters with the purpose of thereby executing or attempting to execute the scheme. Durland v. United States, 161 U. S. 307, 315, 16 Sup. Ct. 508, 40 L. Ed. 709; Weeber v. United States (C. C.) 62 Fed. 740, 741, per Brewer, Circuit Justice; O'Hara v. United States, 129 Fed. 551, 555, 64 C. C. A. 81 (C. C. A. 6th Cir.); Lemon v. United States, 164 Fed. 953, 957, 958, 90 C. C. A. 617 (C. C. A. 8th Cir.); Walker v. United States, 152 Fed. 111, 115, 81 C. C. A. 329 (C. C. A. 9th Cir.).

Further discussion is not necessary. We have considered all the assignments and found no reversible error.

The judgment is accordingly affirmed.