## LOEWENTHAL v. UNITED STATES.

### (Circuit Court of Appeals, Sixth Circuit. June 13, 1921.)

### No. 3449.

1. **Indictment and information ⊚═263—Judgment not reversible where sentence is supported under one good count of indictment.**

    Where the sentence imposed on a defendant convicted on a number of counts is less than might have been imposed under any one of the counts, the judgment is not subject to reversal for insufficiency of the indictment, if any one count is good.

2. **Indictment and information ⊚═129(1)—Poisons ⊚═9—Indictment under Narcotic Act held sufficient and counts not duplicitous.**

    An indictment charging defendant in separate counts with violation of Harrison Narcotic Act Dec. 17, 1914, §§ 1, 2 (Comp. St. §§ 6287g, 6287h), in selling and dispensing morphine sulphate both as a physician and as a dealer, held sufficient and the counts not duplicitous nor inconsistent.

3. **Criminal law ⊚═878(4)—Acquittal on one count held not inconsistent with conviction on another.**

    An acquittal on a count charging defendant with having unlawfully obtained, as a registered physician, morphine for the purpose of sale as a dealer, held not inconsistent with his conviction on another count charging him with the sale of some of such morphine as a dealer without having registered as such and without taking orders on the required forms.

4. **Criminal law ⊚═1036(8), 1044, 1054(3)—Sufficiency of evidence not reviewable where question not raised below.**

    Where there was no motion by defendant for directed verdict, nor request for instructions, nor exceptions to instructions given, the sufficiency of the evidence is not reviewable as matter of right in the appellate court.

5. **Criminal law ⊚═972—Motion in arrest lies only for error on face of record.**

    A motion in arrest of judgment lies only for error on the face of the record, which does not include the evidence or charge.

In Error to the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Criminal prosecution by the United States against Moritz Loewenthal. Judgment of conviction, and defendant brings error. Affirmed.

See, also, 257 Fed. 444.

W. H. Boyd and Cary R. Alburn, both of Cleveland, Ohio (Cary R. Alburn and James Metzenbaum, both of Cleveland, Ohio, on the brief), for plaintiff in error.

Jos. C. Breitenstein, Asst. U. S. Atty., of Cleveland, Ohio (E. S. Wertz, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

---

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error, who was a practicing physician at Cleveland, Ohio, was charged under an indictment containing 34 counts with violating the so-called Harrison Narcotic Act Dec. 17, 1914, c. 1, 38 Stat. 785, Comp. Stat. § 6287g et seq. At the close of the trial the court withdrew 8 counts from the jury's consideration, submitting the remaining 26 counts. There were verdict and judgment of conviction as to 8 of the counts, viz. Nos. 6, 7, 17, 18, 25, 26, 27 and 28, and acquittal as to the remaining counts. In each of these eight counts defendant is charged with violating the act, either as a dealer or as a physician, in selling, dispensing, or distributing morphine sulphate. Section 1 of the act, so far as pertinent and applying it concretely to the case presented, in effect requires every person who dispenses, sells, or distributes morphine sulphate to register with the collector of internal revenue of his district and to pay a certain annual tax. Except in the case of a registered physician, when administering or dispensing the drug in good faith to a patient, in the course of medical treatment, section 2 of the act makes it unlawful to sell, barter, exchange, or give away the drug, unless in pursuance of a written order of the person to whom the drug is sold or given, on a form to be issued for the purpose by the Commissioner of Internal Revenue. When, however, a registered physician dispenses or distributes the drug to a patient in the course of his professional practice only, the requirement of form order does not apply, provided he keeps a record of the transaction, showing certain details required by subdivision (a) of section 2, which record, however, need not include cases where the drug is dispensed to a patient on whom the physician is in personal attendance. Of the counts on which conviction was had, Nos. 6, 7, and 27 (which were under section 2 of the act) charged that defendant was a practicing physician, and that he unlawfully, etc., sold, bartered, exchanged, and gave away morphine sulphate to Arthur Alexander, Nathan Alexander, and Frank Lawrence, respectively, not in pursuance of written order from the respective vendees; counts 17, 18, and 26 (under section 1) charged the selling of morphine by defendant as a dealer to Arthur Alexander, Nathan Alexander, and Frank Lawrence, respectively, without having registered as such dealer, and without having paid the statutory tax. Counts 25 and 28 charged defendant with dispensing and distributing morphine to Sarah Roberts and Frank Lawrence, respectively, without keeping the statutory record of the drugs so dispensed and distributed; defendant being then and there a practicing physician and the distributees not being patients upon whom defendant was in personal attendance. The questions presented relate to the sufficiency of the indictment, alleged inconsistency in the verdict, the admission of testimony, and the sufficiency of the evidence.

1. *The Sufficiency of the Indictment.*—A demurrer directed against each count in the indictment, on the ground that the allegations were insufficient to constitute an offense against the law of the United States, was overruled. There was motion in arrest of judgment directed against this action. There was also motion to quash, likewise over-

ruled, which applied to but three of the counts on which conviction was had, viz. Nos. 17, 18, and 26. The grounds of the motion to quash were, first, duplicity; and second, that each of the counts is vague and indefinite, because failing to show whether defendant was charged with being a dealer without having registered and paid the tax, or merely with making a single sale without having so registered and paid.

[1] The judgment upon conviction was unitary, and covered conviction under each and all of the eight counts, and the punishment imposed was less than might have been imposed under any one of the counts. The judgment is therefore not subject to reversal, if any of the counts on which conviction was had is good and sufficient to support the judgment. Claasen v. United States, 142 U. S. 140, 146, 12 Sup. Ct. 169, 35 L. Ed. 966; Abrams v. United States, 250 U. S. 616, 40 Sup. Ct. 17, 63 L. Ed. 1173; Pierce v. United States, 252 U. S. 252, 253, 40 Sup. Ct. 205, 64 L. Ed. 542.

Under the Anti-Narcotic Act, defendant, if registered and taxed as a physician, was not required to take a written order, or to keep a record of morphine administered by him to a patient as an element of a good-faith medical treatment; but, although registered and taxed as a physician, and only as a physician, he could not lawfully sell, bargain, or give away morphine without at least taking a written order therefor. As said in Jin Fuey Moy v. United States, 254 U. S. 189, 194, 41 Sup. Ct. 98, 100 (65 L. Ed. ——):

"Manifestly, the phrases 'to a patient' and 'in the course of his professional practice only', are intended to confine the immunity of a registered physician, in dispensing the narcotic drugs mentioned in the act, strictly within the appropriate bounds of a physician's professional practice, and not to extend it to include a sale to a dealer or a *distribution* intended to cater to the appetite or satisfy the craving of one addicted to the use of the drug."

And see Webb v. United States, 249 U. S. 96, 99, 39 Sup. Ct. 217, 63 L. Ed. 497.[1]

[2] Turning to the four Alexander counts, and counts 26 and 27, which are two of the Lawrence counts: In our opinion neither counts 6, 7, nor 27 are demurrable as failing to state acts constituting an offense. We think they fully define an offense under the act, and gave defendant sufficient notice of the offense charged to enable him to prepare his defense and to protect himself against a subsequent prosecution for the same offense. This is the test of the sufficiency of the counts. United States v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Daniels v. United States, C. C. A. 6, 196 Fed. 459, 465, 116 C. C. A. 233. Each of these three counts charged that defendant—

"did unlawfully, willfully, knowingly, and feloniously sell, barter, exchange, and give away derivatives * * * of opium, to wit, [a certain number of grains of morphine sulphate.] to * * * not in pursuance of a written order from the said * * * on a form issued in blank for that purpose by the Commissioner of Internal Revenue of the United States under the provisions of [the Harrison Narcotic Act]."

[1] All italics in this opinion are ours.

Section 2 of the act, in its opening paragraph, expressly makes it unlawful for "*any person*" to "sell, barter, exchange or give away" the forbidden narcotics except on a written form order; and if the drug in question was actually sold by the defendant not "within the appropriate bounds" of his professional practice, but only for the purpose of satisfying the cravings of morphine addicts, as the government contends was the case, the fact that defendant was registered as a physician would not relieve him from the obligation to take the form order. True, subdivision (a) of section 2 excepts from the latter's operation the "dispensing or distribution" of the drug to a patient by a registered physician in the course of his professional practice only.

But were we to assume that had the counts charged such dispensing to a patient by a registered physician an allegation that such dispensing was not in the course of defendant's normal practice would have been necessary, yet the express allegation that defendant, who was stated to be merely a practicing (not a registered) physician, did unlawfully, etc., *sell*, etc., the morphine, is on its face and without more normally inconsistent with a dispensing by a .registered physician in the course of professional practice only. In the Jin Fuey Moy Case, supra, the indictment in fact negatived the dispensing in the course of professional practice only; but there seems to have been specific occasion therefor in the fact that the sale was charged to have been accomplished by the use of a prescription, which, standing alone, would naturally suggest an act in the course of professional practice. In our opinion, the criticism stated is technical, unsubstantial, and nonprejudicial, and thus within the terms of section 1691 of the Compiled Statutes and section 269 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1163, Comp. St. § 1246), as amended February 26, 1919 (40 Stat. c. 48 [Comp. St. Ann. Supp. 1919, § 1246]).

As to counts 17, 18, and 26, each of which is for selling, etc., without having registered and paid the tax as a dealer: Section 1 apparently requires registering as a dealer, even on the part of a physician, if morphine is to be sold, as distinguished from a dispensing to a patient in the course of professional practice only. Such is the construction contended for by the government, adopted by the trial court, and admitted or acquiesced in by defendant. The recital in the Jin Fuey Moy Case, supra, suggests that such was the practice adopted by the Revenue Department. We think counts 17, 18, and 26 plainly sufficient.

Nor do we see any repugnancy between counts 6 and 17 (applicable to Arthur Alexander), or as between counts 7 and 18 (applicable to Nathan Alexander), or as between counts 26 and 27 (as related to Lawrence), in the fact that Nos. 6, 7, and 27, respectively, charge a sale without a written order, while counts 17, 18, and 26 charge a sale without having registered and paid the tax as a dealer. Each count charges a sale; the only difference is that in one of the groups the offense is charged to consist in failing to take a written order; in the other in having failed to register and pay the tax as a dealer. There is plainly no necessary repugnancy between the sale by one at the time a practicing physician and a sale by him as a dealer. In the Jin Fuey

Moy Case, supra, it was held that there was no necessary repugnancy even between prescribing morphine (not to a patient and in the course of professional practice only) and selling it.[2]

As to the motion to quash: In our opinion, counts 17, 18, and 26 are not duplicitous; each charges but one offense. The proposition that the respective counts leave it uncertain whether defendant is being charged with being a dealer generally, or with making a single sale only without registering, is too unsubstantial to need much discussion. The offense is the same, whether defendant made but one sale without registering, or whether the sale in question was in the regular course of an unlawful business. Defendant knew whether or not he was registered as a dealer, and could not be misled by any indefiniteness of statement thought to reside in the respective counts.

[3] 2. In our opinion, defendant's acquittal under the twenty-third count is not inconsistent with his conviction under either of the other counts. The gist of the charge in the twenty-third count is that defendant had registered and paid the tax as a physician; that for the purpose of obtaining morphine sulphate he caused to be issued certain order forms described in detail; that he unlawfully, knowingly, willfully, and feloniously obtained by means of these order forms the morphine sulphate and other drugs described, for purposes other than their use, sale, and distribution by him in the legitimate practice of his profession, viz. for the purpose of their sale by him as a dealer therein, without having registered in that capacity and without having paid the special tax as such dealer. It is true that the drugs which were the subject of this count included those embraced in the counts on which conviction was had. In this sense, but in no other, was it an "omnibus count." Clearly, an acquittal on a charge of purchasing drugs for *purposes of sale* as a dealer only is not an acquittal on a charge of *later selling* some of the drugs without the use of order form or without registering, etc., as such, or having sold any of the drugs as a dealer. In other words, a conclusion that defendant did not buy this stock for unlawful purposes is not inconsistent with a conclusion that he *actually used* portions of it unlawfully, especially in view of the facts appearing on the trial, that the stock which was the subject of the twenty-third count was apparently more than one-half of a whole year's supply, and that defendant may have had a lawful use for a portion of it in connection with his sanitarium (later referred to) for the treatment of morphine addicts, and perhaps in the operation of his practice otherwise. We also think the verdict under count 28 not repugnant to or in contradiction of counts 26 and 27, all of which relate to Lawrence.

3. *The Admission of Testimony.*—Error is assigned upon the admission, in a large number of instances, against defendant's objection

---

[2] In view of the conclusions announced above, it is unnecessary, as applied to count 28 (Lawrence) and count 25 (Roberts), each charging a failure to keep the statutory record, to determine whether section 2 of the act makes it an offense of itself for a practicing physician to fail to keep a record of drugs dispensed by him as a physician (except as to patients personally attended), or whether the section should be construed as requiring *either* the taking of a written order *or* a keeping of the record.

of testimony offered by the government. In a considerable number of these instances the ground of the objection is not stated, and this omission of itself disentitles defendant to complain. Robinson v. Van Hooser, C. C. A. 6, 196 Fed. 620, 624, 625, 116 C. C. A. 294, and cases cited. With one exception, the remaining assignments under this head are so plainly without merit as to call for no· specific mention. The exception is this: Defendant was asked on his cross-examination if he had ever been convicted of crime. It developed that the inquiry related to a conviction under the Ohio Drug Act. The ground of the objection was that the violation of the state act occurred during the period of time which is involved in the federal inquiry, and that the transactions were the same. The trial court held, on an examination of the · warrant or "charge," that it was not involved in the federal indictment in the instant case, but was an independent transaction. The record does not show the specific charge on which the state court conviction rested. So far as the record goes, it negatives an identity of offense, and such would be the natural presumption. See Whipple v. Martinson, 255 U. S. ——, 41 Sup. Ct. 425, 65 L. Ed. ——, decided by the Supreme Court of the United States, April 11, 1921. The objection is thus without force and was properly overruled.

[4] 4. *Sufficiency of the Evidence.*—Defendant earnestly contends that there was not sufficient evidence to warrant conviction, and that a verdict should have been directed upon the Lawrence counts, which are Nos. 26, 27, and 28. We find in the record no motion to direct verdict upon the Lawrence counts.[3] There was no motion to direct verdict generally for defendant, nor, so far as appears from the record, a request for any instruction whatever on defendant's part. The charge as given was not excepted to. He therefore has no right to be heard here upon his contention that the evidence was insufficient for conviction. Lockhart v. United States (C. C. A. 6), 264 Fed. 14, 16, 17. It was too late to raise the question on motion for new trial, which was addressed to the discretion of the court. Moore v. United States, 150 U. S. 57, 61, 14 Sup. Ct. 26, 37 L. Ed. 996; Lockhart v. United States, supra.

[5] The motion in arrest of judgment does not help defendant, for not only was that motion confined to the sufficiency of the indictment, but a motion in arrest of judgment lies only for error on the face of the record, which does not include the testimony or charge. Clark's Criminal Procedure, § 186; Towe v. United States (C. C. A. 4) 238 Fed. 557, 558, 151 C. C. A. 493; Dierkes v. United States (No. 3,362) 274 Fed. 75, recently decided by this court.

As already said, defendant was a practicing physician. Since about

[3] Lawrence was not presented as a witness; the government claiming that he could not be had. Near the close of the trial the court announced that, should Lawrence not appear, the counts relating to him would be withdrawn. At the time this announcement was made there had been no testimony touching the Lawrence transaction. Later evidence was presented by the testimony of another witness. No motion was afterwards made to exclude the counts, or to direct verdict thereon, and no exception was taken to their admission.

the year 1904 he had maintained a sanitarium at Cleveland for the treatment of mentally disturbed patients, and at which he was in the habit of treating morphine addicts. In September or October, 1917, he began the practice of dispensing morphine and other drugs to addicts at his office, numbering about 50 daily, and continuing that practice until his arrest, which was about February 12, 1919. Defendant contended that the administering of morphine under this office practice was in the course of legitimate treatment of the drug habit. The government disputed this, and contended it was designed merely to cater to the craving for the drug on the part of addicts, and this broad issue was submitted to the jury by the trial judge, so far as related to defendant's acts which are made the subject of the various counts. The court said that—

"the real question of fact * * * is whether or not the relation and practice in any case in the indictment between defendant and the party named in any count, was that of a physician treating and dealing with the patient in good faith in an effort to treat the patient medically."

The court gave, and at the suggestion of defendant's counsel repeated, to the jury the instruction which we quote in the margin.[4] Both parties introduced testimony addressed to the issue stated by the court. Defendant was registered as a physician, but not as a dealer; he took no written orders for the drugs dispensed, issued no prescriptions, delivered the drugs themselves, and kept a record of names and addresses, and amounts purported to be dispensed each day—treated in the testimony as a day's allowance or treatment. The government presented testimony tending to show that usually only superficial examinations, at the most, were made by defendant of those applying for the drug; that many of those so supplied were long-time addicts; that but a small proportion of such addicts are curable; that no effective treatment for the drug habit was possible, except where the patient was under restraint and unable to get more than the physician's allowance, which the addict is likely to seek to do and to succeed in doing; that Sarah Roberts, while a patient in another sanitarium for a long period, got morphine regularly from defendant; that while the latter usually gave the addict but one day's allowance at a time (except on Saturday, when Sunday's allowance also was given), in some cases he supplied at one time a quantity sufficient for three, six, and even seven days, allowing others than the patient to get the morphine for him, while the record was made to indicate a separate dispensing on each day of what is called a day's allowance or treatment. Such was said to be the case as to the two Alexanders; also as to Sarah Roberts, except that she is not said to have obtained the morphine otherwise than personally. There was also testimony that in many cases, in the absence of defend-

[4] "Under this law a physician is exempt from the use of the official order forms in two classes of cases. If he personally administers the drug to the patient right in the office, either by the needle method or through the mouth, he need not have an official form, or if he determines how much the patient should have, and delivers the quantity to the patient, the patient to administer the drug himself, and this is all done now in good faith, in the course of medical treatment, no order form is necessary."

ant from the office, a nurse in his employ dispensed the morphine in the amounts shown by his record of current dispensings; also that the office charge for the so-called treatments was based solely upon the rate of $1 for each day's consumption, whether a supply for one day or for seven days was furnished at the time.[5]

There was testimony tending to show that Lawrence, who was not an addict and was wholly unknown to defendant, and in no way introduced or vouched for to him, procured of defendant 41 grains of morphine (under the pretense that he was an addict) for which he paid $5.00, and that in this case defendant entered upon the record the fact of dispensing 14 grains on the day in question and 14 grains on the day following, not only leaving 13 grains unaccounted for, but making the transaction appear as covering two days. The evidence offered by the government, unless satisfactorily contradicted or explained, had a tendency to sustain the government's contentions.

On defendant's part there was testimony that he made frequent physical examinations of those to whom he dispensed morphine, and sufficient to enable him intelligently to treat them; that he in effect prescribed each day's supply, and in so doing aimed to reduce from day to day the addict's daily dosage, and usually at least for the purpose of preparing the patient for sanitarium treatment with a view to permanent cure. There was also competent evidence of the propriety of this method of treatment.

Defendant further contends, and there was evidence tending to support that contention, that the majority of the addicts whom he so treated were referred to him by either the internal revenue collector or the health officer of the city, or by other physicians. It also appeared that morphine was dispensed to Mrs. Roberts in ignorance of the fact that she was taking treatment at a sanitarium; also that both the Alexanders had previously been in defendant's sanitarium for treatment, but without success. Defendant testified that each of them had physical infirmities, which rendered them unable to "stand hard treatment." The evidence as to Lawrence was assailed as a case of entrapment by the government, it appearing that he was employed as a decoy to make the purchase.[6] Evidence was given on defendant's part tending to ex-

---

[5] See reference to a somewhat similar practice in Jin Fuey Moy v. United States, supra, 254 U. S. at page 193, 41 Sup. Ct. 98, 65 L. Ed. ——.

[6] Defendant contends that the conviction on the Lawrence counts should be set aside because of the asserted entrapment. It should be enough to say that no claim of this kind was made upon the trial. It may be added, not only that even if the Lawrence counts were excluded the judgment need not thereby be disturbed, and that the testimony as to his experience had a bearing upon the general issue, but also that under the general rule prevailing in the federal courts the fact that sale is made to a decoy is not necessarily a defense to a prosecution therefor. Grimm v. United States, 156 U. S. 604, 610, 15 Sup. Ct. 470, 39 L. Ed. 550; Goode v. United States, 159 U. S. 663, 669, 16 Sup. Ct. 136, 40 L. Ed 297; Goldman v. United States (C. C. A. 6) 220 Fed. 57, 63, 135 C. C. A. 625; Goldstein v. United States, (C. C. A. 7) 256 Fed. 813, 168 C. C. A. 159; Fiunkin v. United States (C. C. A. 9) 265 Fed. 1, 2; Ramsey v. United States (C. C. A. 6) 268 Fed. 825, 827. Whether the instant case furnishes an exception to the rule we are not called upon to determine.

plain or contradict the most, if not all, of the evidence presented by the government. The representative of the revenue department, however, testified that the references of addicts made by that department to defendant were made with the understanding that the patients so referred should be treated in the sanitarium; and some of the requests from the health department expressly show that the patient was expected to be so treated, or that office treatment was to be given only for a short space of time by way of preparation for such sanitarium treatment. The physicians' written requests are not necessarily decisive either way.

Defendant was represented by able and experienced counsel. The trial judge, as evidenced by his remarks when imposing sentence, was convinced of the justice of the conviction. In the absence of motion to direct verdict, or of request or exception to the submission of the case as it was submitted under the charge, we are justified in looking into the record only far enough to determine whether there has been such a plain miscarriage of justice as would warrant a reviewing court in exercising the extraordinary authority to set aside the conviction despite the absence of motion, request, or exception. We cannot weigh the evidence.[7] In our opinion, the case does not justify the exercise of the extraordinary authority referred to.

The judgment of the District Court is accordingly affirmed.

---

[7] Whether a physician's immunity for furnishing morphine to an addict is dependent upon his hope or expectation that he can effect a cure of the narcotic habit is a question not properly raised upon this record, and which we have not considered.