### NAPONIELLO et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. June 14, 1923.)

No. 3048.

Post office ⊙⇒35—Use of mails to send threats is not within act of Congress as to use of mails to defraud; "scheme to defraud."

The use of the mails to send black-hand letters, whereby defendants extorted money by means of threats, is not the use of the mails to promote a scheme to defraud, within Criminal Code, § 215 (Comp. St. § 10385), and that section does not apply to the obtaining of property by threats, even though Congress could have made it so apply.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Lucia Naponiello and others were convicted of using the mails to promote a scheme to defraud, and they bring error. Reversed, with direction to sustain the motion in arrest of judgment.

Charles N. Goodnow, of Chicago, Ill., for plaintiffs in error.

Edwin A. Olson and John B. Boddie, both of Chicago, Ill., for the United States. ·

Before BAKER, EVANS, and PAGE, Circuit Judges.

BAKER, Circuit Judge. Plaintiffs in error were convicted of having committed offenses against the United States. By motions for directed verdict and in arrest of judgment they raised the issue that the facts presented and proved were not in violation of any national statute.

All the counts except the last charged that defendants in violation of section 215 of the Criminal Code (Comp. St. § 10385), used the mails to promote a "scheme to defraud" by sending "black-hand letters," which conveyed "threats to each of said persons that, unless he would deliver to defendants a large sum of money, defendants would cause his death," and that defendants intended by these means to "induce said persons to deliver to defendants large sums of money through fear that defendants would cause their death." The last count charged that defendants violated section 37 of the Criminal Code (Comp. St. § 10201) by conspiring to commit the substantive offenses as laid in the preceding counts.

As defendants were conducting their activities against the complaining witnesses in "Little Italy" in Chicago, the real offenses were against the peace and dignity of the state of Illinois; and Illinois is not unique among the states in recognizing the sharp distinction between obtaining money by false pretenses or other fraudulent means whereby the victim is misled, and obtaining money by blackmail or black-hand threats, whereby the victim consciously is led to yield to fear. Hurd's R. S. Ill. 1919, p. 1008.

Our national government has no power to deal directly with criminal offenses against a state. Through its power to control the mail service, Congress can help to discourage local crimes; and since control of the mails is but a single subject-matter from the national point of view, Congress might be expected to include in one act, or even in one section of an act, matters which as offenses against a state are as far apart as deceit and intimidation.

Section 215 was aimed originally at using the mails to promote "schemes or artifices to defraud." These quoted words show unmistakably that the victim's money must be taken from him by deceit. False pretenses are not counted as including false promises. But Congress could, as it did, prohibit the mailing of letters containing false promises. Sales of counterfeit coin or counterfeit paper money ("green goods") might be made through deception of the buyer. On the other hand, such sales might be the consciously nefarious traffic of buyer as well as of seller. If the mails were used in promoting a "sawdust swindle," the offense would be covered by the original section 215

without amendment. If the mails were used in carrying on a mutually intended sale and purchase of counterfeit money, Congress recognized that such sales were not the obtaining of the buyer's money by deception, and therefore an amendment of the act controlling the use of the mails was necessary. We agree that obtaining money through the intimidating influence of threats is a more heinous crime than obtaining money through deception. But threats which the victim believes will be carried into execution unless he acquiesces in the demands are not deceits. If we take judicial notice that bills to exclude blackmail and black-hand letters from the mails have been introduced in Congress, that would confirm our conclusion that the matters set forth in the indictment cannot constitute crimes against the nation until Congress has explicitly made them so. Compare Weeber v. United States (C. C.) 62 Fed. 742; Horman v. United States, 116 Fed. 350, 53 C. C. A. 570; Walker v. United States, 152 Fed. 111, 81 C. C. A. 329; McConkey v. United States, 171 Fed. 829, 96 C. C. A. 501; Grey v. United States, 172 Fed. 101, 96 C. C. A. 415; Foster v. United States, 178 Fed. 165, 101 C. C. A. 485; Wilson v. United States, 190 Fed. 427, 111 C. C. A. 231; Harrison v. United States, 200 Fed. 662, 119 C. C. A. 78; Stockton v. United States, 205 Fed. 462, 123 C. C. A. 530, 46 L. R. A. (N. S.) 936.

The judgment is reversed, with the direction to sustain the motion in arrest.