## EDWARDS v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1918.)

No. 3065.

1. POST OFFICE ⊂⊃35—OFFENSES—"USE OF MAILS TO DEFRAUD."

Where defendant, who made a compound to be fraudulently sold under the name of a rare and high-priced drug, used the mails for the purpose of ordering his materials, such use of the mails falls within Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1130 (Comp. St. 1916, § 10385), denouncing the offense of using the mails in connection with a scheme to defraud.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Fraudulent Use of the Mails.]

2. POST OFFICE ⊂⊃49—OFFENSES—SCHEMES TO DEFRAUD.

In a prosecution under Criminal Code, § 215, for using the mails in connection with a scheme to defraud, where defendant sold a compound of common drugs as acetyl salicylic acid under labels indicating that it was made in Germany, and drugs of that class, which had become rare, were commonly made there, and there was a belief that German origin was important as tending to insure the quality and therapeutic value of such drugs, the jury might consider the false labels on the question whether defendant intended to defraud, for if it is intended to bring about a sale by misrepresenting the quality or identity of an article in a particular which would be likely to have a persuasive effect on the purchaser's mind this may be a sufficient defrauding.

3. CRIMINAL LAW ⊂⊃814(5)—TRIAL—INSTRUCTIONS—OTHER OFFENSES.

In a prosecution for using mails in connection with a scheme to defraud, whereby defendant sold as acetyl salicylic acid a compound containing acetanilid, without labeling it as required by Pure Food and Drug Act June 30, 1906, c. 3915, 34 Stat. 768 (Comp. St. 1916, §§ 8717–8728), an instruction allowing the jury to consider that fact, although, as the sales were intrastate, the act had no application, was proper on the question of intent to defraud, and not erroneous as allowing the jury to consider another offense.

4. CRIMINAL LAW ⊂⊃371(1)—EVIDENCE—OTHER OFFENSES—INTENT.

Where the question involved is the defendant's intent, evidence of an act having a direct bearing on the intent is admissible, though the act be a separate offense.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Herbert E. Edwards was convicted of using the mails to defraud in violation of Criminal Code, § 215, and he brings error. Affirmed.

Gage, Day, Wilkin & Wachner, of Cleveland, Ohio (Luther Day, of Cleveland, Ohio, of counsel), for plaintiff in error.

Edwin S. Wertz, U. S. Atty., and F. B. Kavanaugh, Asst. U. S. Atty., both of Cleveland, Ohio.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. Plaintiff in error (hereafter called defendant) was convicted for using the mails to defraud, in violation of section 215 of the Criminal Code. Stating only so much of the alleged scheme as pertained to one of its several branches, it was this: Defendant was a physician, doing business, also, as a manufacturing chemist. The drug, acetyl salicylic acid, which had been manufactured in Germany, had become rare and high priced. Defendant made a compound from other comparatively cheap drugs (one of which was acetanilid), which compound he labeled and sold under the name "acetyl salicylic acid," and, although he made it in Cleveland, he caused the labels to say that it was manufactured by a fictitious firm in Germany. He did not sell this through the mails, nor, so far as appears, in interstate commerce; but the genuine and common drugs which he used in its composition he procured by means of a written order therefor sent through the mails to manufacturing chemists in Philadelphia. Upon the sending of this letter rests the supposed violation of section 215.

What may be called defendant's meritorious defense was his claim that acetyl salicylic acid was not compounded by any standard formula, and that his product was, in fact, acetyl salicylic acid and had all its therapeutic effects—or, at least, that defendant, in good faith and reasonably so believed and had no intent to deceive. This defense was tried at length, was submitted to a jury under a charge to which (on this subject) there was no exception, and was found to be untrue. Upon this writ of error, the defendant's complaints are three:

[1] 1. It is said that such a letter as was here sent was not material "for the purpose of executing such scheme or artifice or attempting so to do." It is, in substance, urged that the statute contemplated only using the mails in the course of the final carrying out of a scheme which is ready for that execution by which the fraud is to be consummated. It may be that the words selected and placed in the statute were capable of this comparatively narrow construction; but the settled course of decisions makes it now too late to consider this question as if it were open. This court has twice recently upheld convictions under facts not to be, in principle, distinguished from those here present, where the charge is one of a fraudulent scheme to manufacture and sell a spurious compound, and where the

use of the mails was in procuring the innocent raw materials for effectuating this scheme. In U. S. v. Goldman, 220 Fed. 57, 135 C. C. A. 625, it appeared that the mails were used, by way of an advertisement, to find some one who might be persuaded to become a confederate in the fraud—the scheme being one such that a confederate with the qualities sought by the advertisement was an essential element in carrying out the plan which the defendant had then completely devised. In Shea v. U. S., 236 Fed. 97, 149 C. C. A. 307, the mails had been used in circulating an advertisement seeking a victim who might be defrauded through the operation of a scheme which the defendants had then formed in a general way, but which was doubtless subject to whatever changes the situation might dictate. The drugs which the defendant ordered in this case were free from fraud, the transaction, considered by itself, was an ordinary purchase and sale, and the defendant might have used them for a perfectly rightful purpose; the woman who answered the advertisement in the Goldman Case might have been free from any wrong intent, and might have been rejected by Goldman and never taken into his plan; those who answered the advertisement in the Shea Case would naturally have been free from any fault but might have been unsuitable material and might have received no further attention from Shea; in each case, the scheme was not ready for its final execution; but in each case, the scheme had been formed and laid out by the defendant along the main and general lines which would be followed, and in each case the materials were used in aid of getting ready for the final execution. If the view of the statute which brings such a procuring of materials within its prohibition might be thought too broad, the construction is one to which we are fully committed.

[2] 2. The court was requested to charge that if the defendant honestly believed that his product was rightly called acetyl salicylic acid, then the fact that he intended to sell it under labels indicating that it was made by a fictitious firm in Germany, would not constitute a plan and scheme to defraud within the meaning of section 215. The court denied this request but charged:

"The court says to this jury, if it did not say it before, that you have the right to go to the use of these false names, these made-up names, these fictitious names on these labels, for the purpose of getting an index of the defendant's mind and intent. That is a part of the charge in this case. And if this charge were nothing more than a charge that the scheme was that the defendant would invent the names of fictitious corporations of domestic and foreign location, and by the use of those names upon labels otherwise false, induce people to buy goods otherwise than those they were expecting to get, this charge would be broad enough to be a scheme to defraud within the view of section 215. That much of the scheme is in this charge."

We are unable to say that there was prejudicial error in this charge. We do not mean that the statutory scheme to defraud is necessarily to be found in every false statement of origin or even that it always may be there found; but this charge and refusal must be considered on the facts here involved. It is not denied that drugs of this class had been commonly made in Germany, and that there was a common belief that the German origin was important as tending to insure the

quality and therapeutic value of the drugs. Under these conditions, the claim of German origin might well be the controlling consideration in bringing about a sale; and that defendant believed it would be a material inducement is evident from its adoption by him. It is now well settled that whether the purchaser gets something "equally as good" and whether he gets an article actually worth the full price he paid are not controlling. If it is intended to bring about a sale by misrepresenting the quality or identity of the article in particulars which would be likely to have a persuasive effect upon the purchaser's mind, this may be a sufficient defrauding. Sparks v. U. S. (C. C. A. 6) 241 Fed. 777, 782, 154 C. C. A. 479; Harrison v. U. S. (C. C. A. 6) 200 Fed. 662, 665, 119 C. C. A. 78.

In Horman v. U. S., 116 Fed. 350, 53 C. C. A. 570, this court held that "to defraud" and "to injure" were largely equivalent terms; and based upon this holding, it is now urged that where there is no intent to accomplish final pecuniary injury, there can be no intent to defraud; but this does not follow. In that case, the court was holding that the words "to defraud" may reach an injury by force or intimidation as well as an injury by trickery; but we think there was no purpose to hold that there must necessarily be an intent to get another's money without giving value for it; an intent to get it by misleading the owner in any particular that affects his completely intelligent consent may be sufficient. See Bettman v. U. S. (C. C. A. 6) 224 Fed. 819, 140 C. C. A. 265.

[3, 4] 3. The court charged the jury that the Pure Food and Drug Act (Act June 30, 1906, § 8 [Comp. St. 1916, § 8724]) required that any compound containing acetanilid should be labeled to show this fact, and that, if not so labeled, it was misbranded and a violation of that act; and further charged:

"* * * This Food and Drug Act was a statute of great notoriety. The defendant says that when he engaged in these transactions he did not know of its existence. He is entitled to so testify before you and have you consider his testimony in that particular. In determining whether or not you should believe him in this particular, you have a right to look at him as he says he was, his business and his relation to the subject-matter of this particular act; you have a right to consider whether he should not have known the existence of this act, and whether or not he did not, when putting out these packages, if you find that any one of these was mislabeled or misbranded—whether or not he did not violate, intentionally, this law. It is true that he is not here under prosecution for misbranding, for violating the Food and Drug Act. This is not the prosecution. He is here under a charge of violating another law of the United States. But you have a right, in determining the character of his transactions, to consider the relation which this notorious law bore to his operations out of which, and because of which this charge comes. It is my duty to say to you that if you believe him when he said that, then you ought not to hold against him the fact that he violated the act, if he did violate the act, but in considering whether or not you should believe him when he made that statement, you must look to the fact which he has brought to your attention himself that he was a druggist, a chemist and a physician of long standing, whose daily business brought him in direct relation with the subject-matter of that act."

Complaint is made of this charge because:

"The jury is instructed that if they believe the defendant violated the Food and Drug Act, they can hold this fact against him in determining the

249 F.—44

issue as to whether or not he is guilty of committing an altogether separate and distinct crime—using the mails to defraud."

This complaint has superficial force, but when all the charge on this subject is considered in its relation to the atmosphere of the case, we do not think it should be interpreted as a charge that guilt of one crime is evidence of guilt of another. The Pure Food and Drug Act relates, in the end, to interstate commerce, and there can be no violation of the act unless the food or drug is intended to be put in that commerce. It was not claimed that defendant had sold his articles in interstate commerce, but for the purposes of this trial it was practically conceded that he had not, and so it was conceded that he was not guilty of any offense punishable by that statute. It is, therefore, not to be supposed that when the trial judge referred to "violating" the Pure Food and Drug Act, he was intending to speak of punishable guilt under that act, or that the jury so understood him. The circumstances indicate a much more reasonable and probable meaning. This act was generally familiar to druggists and physicians the country over—the final customers whom defendant intended to reach; they commonly understood that, because of the general enforcement and observance of this act, any compound containing acetanilid would disclose that fact on the label, and they would naturally believe that if a compound offered for sale was not thus labeled, they could safely use it in cases where acetanilid would be dangerous; if defendant knew of this regulation, and hence knew of the effect it certainly had upon the purchasing trade, he would know that his conduct in omitting any mention of acetanilid from his label would inevitably deceive and defraud the ultimate customers for his article. The vital question to be determined by the jury was whether defendant actually intended such fraud and deceit by putting out his article as acetyl salicylic acid of German manufacture; and the part of the charge now under review was in substance only an instruction that, in determining whether his intent was fraudulent or honest, they could consider the fact, if they found it to be a fact, that in the very same transaction he was intending to deceive and defraud the same people in another particular. Viewed in this way, the charge was not objectionable, and was well within the settled rule which permits even complete guilt of another offense to be shown where the question involved is the defendant's intent, and where the other act has a direct bearing on that intent. See the cases upon this subject reviewed and compared in Shea v. U. S., supra, 236 Fed. 102, 149 C. C. A. 307.

The judgment must be affirmed.