### BROWNE v. UNITED STATES.

### WATERBURY v. SAME.

(Circuit Court of Appeals, Sixth Circuit.   July 19, 1923.)

Nos. 3636, 3637.

1. **Bribery ☞1(1)—Authority of representative of War Department held sufficient basis for bribery.**

An army officer, who was acting as chief representative of the War Department, though he could not make a valid sale of war materials and could only recommend sales, had such authority as would furnish basis for an offense of bribery in connection with a sale, under Penal Code, § 39 (Comp. St. § 10203).

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Conspiracy** ☞28—**Belief by defendants that officer had authority essential to make out criminal intent to bribe.**

In a prosecution for conspiracy to bribe a United States officer, under Penal Code, § 39 (Comp. St. § 10203), belief by defendants that the officer had authority was essential to make out their criminal intent.

3. **Criminal law** ☞37—**Entrapment of conspirators held not shown.**

In a prosecution for conspiracy to bribe an officer, under Penal Code, § 39 (Comp. St. § 10203), acts of officer approached *held* not to constitute improper entrapment.

4. **Conspiracy** ☞33—**That purchaser pays value of property not inconsistent with existence of fraud in bringing about sale.**

The fact that war materials were not worth more than defendant bid therefor, was not inconsistent with existence of fraud in bringing about a sale, and a conviction for conspiracy to defraud the government was not thereby rendered improper.

5. **Criminal law** ☞423(3)—**Letter written by conspirator held admissible as against associates.**

A letter written by one alleged conspirator to a co-conspirator, but never received by the latter, was admissible against all conspirators, if it was an act adapted to carry out the conspiracy.

6. **Criminal law** ☞137(5)—**No complaint of admission of confession of another without objection.**

Where defendants' counsel acquiesced in court's ruling that their rights would be preserved by permitting an entire confession of an alleged co-conspirator to be read, to be followed by a motion to strike out portions thought inadmissible, no complaint could be made on appeal as to the admission of the confession, which contained damaging recitals and statements.

7. **Arrest** ☞71—**Criminal law** ☞393(2)—**Documents on person arrested may be seized and used in evidence.**

Documents found on the person or in the immediate possession of one lawfully arrested are not to be considered as obtained by unlawful search or seizure, and to use them on his trial is not to compel him to give evidence against himself.

In Error to the District Court for the Southern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Grant Hugh Browne and Lester J. Waterbury were convicted of conspiracy, and respectively bring error. Affirmed.

Thomas B. Felder, of New York City, for plaintiffs in error.

F. L. Eaton, Asst. U. S. Atty., of Detroit, Mich. (Earl J. Davis, U. S. Atty., of Detroit, Mich., on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. After the Armistice, vast amounts of material scattered over the country and belonging to the government were left in the possession and control of the Ordnance Division of the War Department. These were to be disposed of by sale. For that purpose the Ordnance Salvage Board was organized, with its general organization in the War Department in Washington, and with 13 districts in the country, each having its local board. In the Detroit district, Lieut. Reamy was chairman of the committee on sales of the local board. Such sales were authorized by the Act of July 9, 1918 (40 Stat. 850), which provided that the President, through the department heads, might sell war materials. The system of acting through

Ordnance Boards was authorized by the Secretary of War. Maj. Waterbury was at Washington, in the Finance Division of the Ordnance Department. Capt. Nicholson was stationed at Detroit, as a disbursing officer. Browne was a civilian in New York, dealing in war materials. Browne, Waterbury, and Nicholson (and others) were prosecuted at Detroit upon two indictments. The first alleges a conspiracy to defraud the United States by bringing about a sale from Reamy to Browne of a lot of these materials at much less than the real value, and to accomplish this by bribe to be paid by Browne to Reamy. The second indictment charges a conspiracy to bribe an officer of the United States, in violation of section 39 of the Penal Code (Comp. St. § 10203). Upon the trial Nicholson gave testimony for the United States, and all of the three named were convicted. Browne and Waterbury bring separate writs of error, but upon substantially the same record.

The outstanding and undisputed fact was that, during the pending purchase of these materials by Browne, he paid Nicholson $5,000 and Nicholson paid part of this to Reamy. Lieut. Reamy was acting under instructions of his superior officers, and no intimation of wrong is made against him. Browne contends that the money he paid was merely a personal loan to Nicholson, as a friendly act. Nicholson's story, if believed and taken with ordinary inferences, establishes the conspiracy as charged.

[1] The first substantial question raised is as to the extent of Reamy's authority. It is said that he had no authority to sell, that a sale by him would not be an official act, and hence that there could be no conspiracy to bribe or to defraud by means of a bribe. We find no occasion to consider precisely how much right Lieut. Reamy had to make a sale without specific authorization from Washington. It is entirely clear that he was the chief representative of the War Department at Detroit in this connection, and that, whether or not he could himself make a valid sale, he could at least recommend to the department, and that his recommendation would be an official act, and would be of value to the expectant purchaser, while an adverse stand by him would probably block a sale. We consider this authority enough to make the necessary basis for an offense under section 39. The case is essentially similar in this respect to that of Rembrandt v. U. S. (C. C. A. 6) 281 Fed. 122, 124. We there held that the co-operation of the prohibition agent would be of substantial value and assistance to the person offering the bribe, and whether the agent had authority by himself to do the complete act which he was solicited to do therefore was not controlling. We apply the same principle here, and hold that sufficient authority on Reamy's part appeared, so that the course he might take in the desired direction would be official action within section 39, and would be "acts done or omitted in violation of his lawful duty." See Haas v. Henkel, 216 U. S. 466, 480, 481, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112. We are cited to no authority to the contrary. With this view of the matter, the charge given was a sufficient response to the requests made.

[2] It is said that the court charged the jury that the criterion upon

this point was not how much authority Reamy had to make, or recommend, sales, but how much the defendants thought he had, and that they would be guilty, if they thought he had such authority, even though he had none in fact. Although no exception was taken to the charge in this respect, such an instruction would be so vitally erroneous upon the bribery count that it might be our duty to notice it, regardless of exception; but we do not so interpret the charge when taken all together. As we read the charge, this belief by defendants was an element in addition to actual authority by Reamy, both of which elements the jury must find to exist in order to convict. In other words, the court charged that belief by defendants that Reamy had authority was essential to make out their criminal intent, and if there was any error upon this subject it was in defendant's favor.

[3] The defense chiefly relied upon is that of entrapment, and this is forceful enough to require careful examination. The story begins with personal conversations by Lieut. Reamy with Nicholson and Waterbury—the first only an acquaintance, and the second until then a stranger—in which conversations both of them seemed to urge their friend Browne as purchaser, and to carry the urging to such an extent, and to accompany it by such vague suggestions of benefit, as to raise Reamy's suspicions that they suggested an opportunity for him to accept a bribe, if he were willing; though it must be said that these remarks and comments, of themselves, would be totally insufficient in law to support any inference of a guilty intent. He then reported the matter of his supicions to the Ordnance Department at Washington, and was instructed to let the matter take its course and develop into an offer of bribe, if it did so without any assistance or encouragement from him, and was instructed also as to plans for preserving satisfactory evidence of whatever happened.

Returning to Detroit, he sent word to Browne, at the address which had been furnished by the others, that bids for this material would be be received up to a certain date, and asked if Browne was interested. Browne came to Detroit, met Reamy, procured details as to amounts and qualities of materials subject to bid, and submitted to Reamy a bid in writing. At the same time, and because of Browne's understanding that at least three bids must be received, he submitted two other bids in other names, but quite obviously from mere dummies for him. After a short delay, Lieut. Reamy notified him that his bid was accepted and that a 10 per cent. cash payment would be required. It was at this point that the money was paid by Browne to Nicholson, and which Nicholson said was paid pursuant to an arrangement with Browne that at least this amount should be divided between Reamy, Waterbury, and Nicholson, and of which he paid part to Reamy. The matter went no further; Browne and Nicholson being arrested at Detroit, and Waterbury later, after returning from abroad.

We have no purpose to disparage opinions like those of the Ninth C. C. A. in Woo Wai v. U. S., 223 Fed. 412, 137 C. C. A. 604; and of Judge Hough in U. S. v. Lynch (D. C.) 256 Fed. 983. Each treats of a case where the officers led and persuaded defendant into criminal acts which he would not otherwise have committed; but the facts of

the present case clearly gave the jury the right to place it within the class in which the offense is not encouraged, but only permitted, and where the entrapment consists only in furnishing that opportunity which the defendant of his own volition seeks. Examples of this class are to be found in the Supreme Court in Grimm v. U. S., 156 U. S. 604, 609, 15 Sup. Ct. 470, 39 L. Ed. 550, and Scott v. U. S., 172 U. S. 343, 349, 19 Sup. Ct. 209, 43 L. Ed. 471, and in this court in Goldman v. U. S., 220 Fed. 57, 62, 135 C. C. A. 625, and Billingsley v. U. S. (C. C. A.) 274 Fed. 86, 89.

This matter of entrapment might have a different aspect if the offense here charged were the final act itself, as if, for example, the payment of money by Browne were essential to make out the offense. In that case it could be said with much force (how much we do not decide) that the notice from Reamy to Browne that he had accepted the bid, and hence that the time had come to pay the money, was a false pretense made for the purpose of getting Browne to pay the money, as he otherwise would not have done. Here, however, the offense is conspiracy, and it was completed by overt act, at least as soon as Browne's bid was submitted. Up to that time, Reamy had never made any holding out or inducement, excepting that he would receive bids. It is true enough that he did not advertise for bids, and that he did not expect to get any bid except Browne's, and that he did not believe that this would be a bid in good faith which he could accept. To that extent it is true that Reamy never expected any sale to go through, and did not suppose his proceedings would have any result, excepting the one they did have; but, when we say this, we have stated the matter in the strongest possible light for defendants, and even then we think it an insufficient defense. Reamy had only suspicions, and there seems no reason to doubt that, if the bid of Browne had been in good faith, Reamy would have treated it in good faith, and either rejected it, because too small, or sent it to Washington with his approval. In view of this, it cannot be said that the whole proceeding on Reamy's part was fictitious, and done for the purpose of creating a crime. It was rather affording an opportunity to one who might or might not take advantage of it.

[4] Defendants undertook to prove that the materials upon which Browne bid were worth at the most no more than he paid for them, and hence that there was no conspiracy to defraud. This result does not follow. It is not at all inconsistent with the existence of fraud in bringing about a sale that the purchaser gets property which is worth as much as he pays. Haas v. Henkel, supra, 216 U. S. at page 480, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112; Edwards v. U. S. (C. C. A. 6) 249 Fed. 686, 689, 161 C. C. A. 596, and cases cited.

The record contains many assignments of error based upon rulings during the trial. Some of them are covered by what we have said upon the subjects of authority and of entrapment. Some were withdrawn upon the oral argument. Many of them are as to details as to which the claim of prejudicial error is not forceful enough to justify discussion. Upon a review of them, we find none which call for comment, except as follows:

[5] There was much evidence as to things done or said by one defendant, not in the presence of the others. From time to time during the trial, and again during the charge, the jury was properly instructed that such things should be taken as evidence against only the party doing the act or making the statement, and those whom the jury, from other evidence, found to be then associated in the conspiracy. The most plausible claim of error along this line relates to a letter written by Nicholson to Waterbury; but never received by the latter. Waterbury complains of its admission. The writing of it was an act adapted to carry out the conspiracy, if there was one, and hence it was admissible against Waterbury upon the contingency above stated, and, when received, its admission was properly limited.

[6] A so-called confession, made in writing and signed by Nicholson two or three days after the end of the conspiracy, was received in evidence. The court ruled and instructed that it was received as against Nicholson only, and not as against any other defendant. It contained very damaging recitals and statements as against Browne and Waterbury. Whether these portions of it should have been permitted to go before the jury at all would be a question which we need' not consider. Counsel for the other defendants acquiesced in the court's ruling that their rights would be preserved by permitting the whole statement to be read, to be followed by their motion to strike out such portions as they thought inadmissible, and thereafter they made no such motion, excepting as to one unsubstantial item.

[7] When Browne was arrested at Detroit, his person and his bag were searched, and much of the evidence used on the trial consisted of documents and correspondence thus discovered. Suitable objections to this evidence were preserved, on the ground of violation of the Fourth and Fifth Amendments. The arresting officers had neither warrant of arrest nor search warrant, but they undoubtedly had reasonable cause to believe that a felony had been committed by Browne, and, upon elementary principles, the arrest was lawful. We regard it as the established rule that documents found upon the person or in the immediate possession of one lawfully arrested are not to be considered as obtained by unlawful search or seizure, and that to use them on his trial is not to compel him to give evidence against himself. Weeks v. U. S., 232 U. S. 383, 392, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Baron v. U. S. (C. C. A.) 286 Fed. 822, 824.

Finding no error, the judgments in these two cases are affirmed.