MARRON et al. v. UNITED STATES. *

GORHAM v. SAME. KISSANE v. SAME.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1925.)

No. 4523.

1. Arrest ⚖=71—Searches and seizures ⚖=7—Seizure of ledger held lawful, as incidental to arrest, though unauthorized by search warrant under which officers were acting.

Seizure of account ledger, showing sales of liquor and payments of money to police of-

Rehearing denied November 9, 1925.

ficers, held, under Const. Amend. 4, proper as incidental to arrest, though search warrant under which officers were acting authorized only seizure of liquors.

2. Intoxicating liquors ⚖=174—Possession of liquor and maintenance of nuisance are continuing offenses.

Possession of liquor and maintenance of nuisance are continuing offenses.

3. Arrest ⚖=63(3)—Arrest without warrant of defendant in charge of premises on which liquor found held authorized.

Officers, searching premises under authority of search warrant and finding liquor, held authorized to arrest person in charge of premises without warrant as for misdemeanor committed in their presence.

4. Arrest ⚖=71—As incident to lawful arrest, officer may search prisoner and seize evidence of his guilt.

As incident to lawful arrest, officer may search prisoner and seize evidence of his guilt.

5. Arrest ⚖=71—Right to search as incidental to arrest extends to premises in control of defendant.

Right to search as incidental to lawful arrest extends to premises controlled by defendant, and authorizes seizure of that which is evidentiary of crime.

6. Criminal law ⚖=393(2)—Admission in evidence of ledger kept by defendants, showing unlawful liquor transactions, held not violation of Const. Amend. 5.

Admission in evidence of account ledger kept by defendants charged with conspiracy to violate prohibition law, which showed purchases and sales of liquors and payments of money to police officer, held not violation of Const. Amend. 5, as compelling defendants to be witnesses against themselves, particularly in view of National Prohibition Act, tit. 2, § 10 (Comp. St. Ann. Supp. 1923, § 10138½e), requiring record of manufacture, purchase, or sale of liquor, as one who records his affairs in a book subject to inspection under statute cannot complain of consequent invasion of his privacy.

7. Criminal law ⚖=393(2)—Private papers of a party are competent evidence against him in criminal cases.

Private papers of a party are competent evidence against him in criminal cases.

8. Criminal law ⚖=423(1)—Acts or declarations of party thereto, in reference to common object, admissible against other parties.

Where there is proof of conspiracy, acts or declarations of one of parties thereto in reference to common object are admissible against others.

9. Criminal law ⚖=1169(7)—Error in admitting proof of declaration or acts of alleged conspirator before proof of conspiracy cured by subsequent proof.

Error in admitting evidence of acts and declarations of one of alleged conspirators, before existence of conspiracy is established, is cured by subsequent proof of conspiracy.

**10. Criminal law ☞683(1)—Testimony, in rebuttal of that of police officer charged with conspiracy, held properly admitted.**

Where police officer, charged with others with conspiracy to violate National Prohibition Act' (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), testified that he had never been able to gain admittance to flat he was supposed to have had under observation, it was not error to admit, in rebuttal, testimony of another witness that witness had seen officer in flat and that officer had seen witness take a drink.

**11. Criminal law ☞684—Discretionary to receive in rebuttal testimony admissible in chief.**

It is within discretion of trial court to receive in rebuttal testimony which ought to have been offered as part of case in chief.

**12. Criminal law ☞427(5)—Evidence held to prima facie show complicity in conspiracy rendering admissible proof of acts and declarations.**

Evidence held to prima facie show that certain defendants were parties to conspiracy, and render admissible proof of their acts and declarations against all.

**13. Criminal law ☞901—Motion for directed verdict is waived by subsequent offer of evidence.**

Motion for directed verdict is waived by subsequent offer of evidence.

**14. Conspiracy ☞48—Evidence held sufficient to go to jury in prosecution for conspiracy to violate prohibition act.**

Evidence held sufficient to go to jury, in prosecution for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

**15. Conspiracy ☞27, 43(5)—Overt act need not be unlawful, nor its connection with conspiracy be shown by indictment.**

Overt act need not be unlawful act, nor is it necessary that indictment show a necessary or logical relation of overt act to conspiracy; it being sufficient if it charges that act was in furtherance of unlawful scheme.

**16. Conspiracy ☞27—Particular defendants need not be charged with doing of overt act.**

Under Cr. Code, § 37 (Comp. St. § 10201), it is not necessary to charge particular defendants with overt act; being sufficient if any party to conspiracy did overt act in furtherance of it.

**17. Criminal law ☞814(1)—Denial of instruction defining limitation on officer's power to arrest not error.**

In prosecution of police officer and others for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), where officer was not charged with failure to arrest, denial of instructions defining limitations on his power to arrest was not error.

**18. Criminal law ☞394—Searches and seizures ☞7—Const. Amend. 4 no limitation on authority of state officers.**

Const. Amend. 4 is no limitation on authority of state officers, and testimony with reference to raids by state officers in which federal officers had no part is admissible in prosecution for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

**19. Searches and seizures ☞7—Federal officers' seizure of liquor, found by state officers, who obtained admission to premises by subterfuge, held violative of Const. Amend. 4.**

Where police obtained admission to premises under pretense of desiring to make sanitary inspection, and, on discovering intoxicating liquor, summoned federal officers, who seized it, held seizure was violative of Const. Amend. 4.

**20. Searches and seizures ☞3—Possession of facts entitling police to warrant to search particular premises does not validate search made without warrant.**

That facts in possession of police would have entitled them to warrant to search particular premises does not validate search made without warrant.

**21. Criminal law ☞369(6)—Evidence of conspirator's possession of liquor at residence held relevant, in prosecution for conspiracy to violate prohibition act.**

Evidence as to liquor seized in residence of one charged with conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), in conduct of business at another place, held relevant.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

Separate writs of error by Joseph E. Marron and George Birdsall, by Joseph Gorham, and by Patrick Kissane, to review a judgment of conviction of conspiracy to violate the National Prohibition Act. Judgment as to Marron reversed, with directions to grant new trial; as to the others, affirmed.

George Hawkins, Walter Brand, Joseph E. Marron, George Birdsall, Charles Mahoney, Patrick Kissane, and Joseph Gorham were indicted for conspiracy to violate the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). Hawkins was never apprehended, and Brand was acquitted. The other defendants were convicted, and Marron, Birdsall, Kissane, and Gorham have sued out writs of error to review the judgment of conviction. For convenience, the parties indicted will be referred to as the defendants.

Hugh L. Smith and Charles J. Wiseman, both of San Francisco, Cal., for plaintiffs in error Marron and Birdsall.

William A. Kelly, of San Francisco, Cal. (Devlin & Devlin, of Sacramento, Cal., of counsel), for plaintiff in error Gorham.

Joseph L. Taaffee, of San Francisco, Cal., for plaintiff in error Kissane.

Sterling Carr, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

McCAMANT, Circuit Judge. On the 30th of March, 1922, the defendant Hawkins rented the upstairs flat at 1249 Polk street, San Francisco. He used the premises for the sale of intoxicating liquors, and on the 26th of July, 1923, the defendant Walter Brand succeeded to the business. The jury must have found from the evidence that Brand conducted the place until the latter part of October, 1923, on his own account, and that he then turned the business over to the defendant Marron. The evidence indicates that Marron operated the place as a saloon from about November 1, 1923, to October 3, 1924; that the defendants Birdsall and Mahoney were in charge from day to day serving drinks to those who came.

The defendant Gorham was a sergeant of police and the defendant Kissane a police officer. The government's contention is that they became parties to the conspiracy by the corrupt receipt of money and by securing the other defendants against interference by the police.

Brand operated under the Hawkins lease, but on the 2d of November, 1923, a new lease was executed to the defendant Marron, which remained in effect at least as late as October 3, 1924.

On the 22d of September, 1924, a prohibition agent purchased drinks at this place. An affidavit to this effect was filed with a United States commissioner, who issued a search warrant. The validity of this warrant is not attacked. It directed the search of the entire second floor at 1249 Polk street, including lockers, closets, and cupboards. This warrant was issued October 1, 1924, and executed on the following day. The officers found the defendant Birdsall in charge. The search disclosed a considerable quantity of liquor which was seized and found to contain more than one-half of 1 per cent. of alcohol. Birdsall was arrested. The officers found in a closet in the front room 16 pint bottles of champagne and a gray ledger, which they also seized. The evidence showed that from page 34 on the great bulk of the writing in this ledger was that of the defendant Marron. The ledger purported to be a record of the business carried on at 1249 Polk street. It showed the gross receipts and expenses from day to day, also an inventory of the liquors on hand on certain dates. The expenses included purchases of oranges, lemons, ice, Shasta water, seltzer, and other articles useful as barroom appurtenances. The book showed a large number of payments to Kissane of $5 each. There were also records of payments of larger sums to the "police," and a number of entries entitled "gift." On page 92 there was an item, "Gorham 60," with lines run through it. This item bore date July 26, 1924; on the following page under date of July 28 there was an item "Gorman 60." There was also on page 93, under the heading "July money out," an item "Joe Gorham 50." This item also had lines drawn through it. There were a number of other accounts entitled "Money Out" in the book, and quite a good many of the items in these accounts had lines drawn through them. The record purported to show that Mahoney was paid a salary and that the profits were divided between Marron and Birdsall. There were accounts showing the sale of liquors by the bottle and in some cases the names of the purchasers were given.

On the 22d of November, 1924, the defendant Birdsall filed a petition praying for the return of this ledger to him, on the ground that the search warrant executed on October 2d authorized the seizure of nothing except liquors. All of the defendants objected to the reception of this ledger in evidence. These objections were overruled, and the action of the court in this respect is the error chiefly relied upon.

[1] The government admits that the search warrant gave the officers no right to seize the ledger, inasmuch as the warrant mentioned nothing except liquors. The seizure of the ledger took place when the defendant Birdsall was arrested. In connection with the arrest, it is contended that the officers had authority to search the premises and seize anything of evidentiary value which they found. The evidence of the officers is to the effect that no one lived in the flat which was searched. It was used wholly for business purposes.

[2] When the officers entered on the premises on the 2d of October they found the defendant Birdsall in the unlawful possession of liquor. There were found a cash register, slot machines, glasses, tables, and other indications that a business was being conducted when the liquor was seized. This business has been declared a public nuisance.

The possession of liquor and the maintenance of a nuisance are continuing offenses. The defendant Birdsall was committing these misdemeanors in the presence of the officers.

In Ex parte Morrill (C. C.) 35 F. 261, 267, Judge Deady says:

"A crime is committed in the presence of the officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe, or reasonable ground to suspect, that such is the case. It is not necessary, therefore, that the officer should be an eye or an ear witness of every fact and circumstance involved in the charge, or necessary to the commission of the crime."

In U. S. v. Stafford (D. C.) 296 F. 702, 703, 706, the above authority is followed. The court says:

"In every case where there is some evidence tending to show that an offense is being committed, and it is such as to cause the officer sincerely to believe that such is the case, and it turns out that his belief is correct, the arrest and subsequent search and seizure are legal."

[3, 4] Although the officers who seized the gray ledger had no warrant for the arrest of Birdsall, they had authority to arrest him as guilty of a misdemeanor committed in their presence. Vachina v. U. S. (C. C. A.) 283 F. 35; Agnello v. U. S. (C. C. A.) 290 F. 671, 679. Such an arrest is within the authority committed to prohibition officers. Lambert v. U. S. (C. C. A.) 282 F. 413, 417; U. S. v. Rembert (D. C.) 284 F. 996; McBride v. U. S. (C. C. A.) 284 F. 416, 418; Peterson v. U. S. (C. C. A.) 297 F. 1002. As incident to a lawful arrest, the officer may search the prisoner and seize evidence of his guilt. U. S. v. Wilson (C. C.) 163 F. 338; U. S. v. Murphy (D. C.) 264 F. 842, 844, 845; Vachina v. U. S. (C. C. A.) 283 F. 35; Baron v. U. S. (C. C. A.) 286 F. 822, 824; Donegan v. U. S. (C. C. A.) 287 F. 641, 649; Agnello v. U. S. (C. C. A.) 290 F. 671, 684; Browne v. U. S. (C. C. A.) 290 F. 870, 875; U. S. v. Stafford (D. C.) 296 F. 702, 703; Sayers v. U. S. (C. C. A.) 2 F. (2d) 146.

[5] The property and papers of the defendant are no more sacred than his person. The right of search extends to the premises in control of the defendant arrested, and authorizes the seizure of that which is evidentiary of the crime. U. S. v. Wilson (C. C.) 163 F. 338; Agnello v. U. S. (C. C.

A.) 290 F. 671, 679; U. S. v. Vatune (D. C.) 292 F. 497, 500; Swan v. U. S., 54 App. D. C. 100, 295 F. 921, 922; Sayers v. U. S., 2 F. (2d) 146.

The search was not unreasonable, and it did not violate the rights of Birdsall and Marron under the Fourth Amendment.

[6] It is strongly contended by Marron and Birdsall that, even if the ledger was properly seized, it is not admissible in evidence over their objection, because of the provision in the Fifth Amendment to the federal Constitution that "no person * * * shall be compelled in any criminal case to be a witness against himself." The argument is that the admission in evidence of this book kept by Marron and Birdsall is equivalent to calling them to the stand and requiring them to testify for the government. In support of this contention, these defendants rely on Hagen v. U. S. (C. C. A.) 4 F. (2d) 801, a recent decision of this court, and on Boyd v. U. S., 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; Weeks v. U. S., 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Silverthorne Lumber Co. v. U. S., 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319; Gouled v. U. S., 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; and Amos v. U. S., 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654. In the Hagen Case, this court held the search warrant invalid for lack of a sufficient affidavit to support it. The Weeks, Silverthorne, and Amos Cases involved searches without any warrant whatever. In all of these cases the seizures were held to be improper, and the government was denied the right to use the evidence unlawfully seized. These authorities do not support the present contention that because the damaging entries in the gray ledger were written by Marron, they cannot be received in evidence over his objection.

Boyd v. U. S., 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, was a forfeiture proceeding based on alleged violation of the customs laws. In the course of the trial it became important for the government to show the quantity and value of some glass previously imported by the defendant. An order was made requiring him to produce his invoices. This order was passed under the authority of the fifth section of the Act of June 22, 1874 (Comp. St. § 5799). This section of the statute permitted the attorney for the government, in cases specified in the act, to allege the facts he expected to prove by the paper or book desired, and thereupon the court was authorized to direct its

production under penalty of having the facts stated in the government's motion taken as confessed. The court held that this was tantamount to requiring a party to produce at the trial his private papers; such compulsory production of private papers in the rightful possession of defendant when the trial began was held to be equivalent to compelling him to testify against himself. The statute was held to be violative of the Fifth Amendment and therefore void. The case does not hold that a writing of the defendant in the lawful possession of the government is inadmissible as evidence against him.

In Gouled v. U. S., 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647, the Circuit Court of Appeals for the Second Circuit certified six questions to the Supreme Court. The first two related to papers surreptitiously taken from defendant's office without any color of right, and the other four related to papers seized under the authority of search warrants. It was held that none of the papers could be received in evidence over defendant's objection. The court said that a search warrant "may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding." The court holds that all of the papers seized were taken unlawfully by representatives of the government, and that therefore the government could not use the evidence. Mr. Justice Clarke says:

"There is no special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized."

The court then holds that the papers involved in the Gouled Case were private papers, as to which the government had no right of possession.

The case at bar is distinguishable from the Gouled Case in that here the seizure was lawful. There is also a clear distinction between the papers seized in the Gouled Case and the gray ledger found at 1249 Polk street. It is provided in section 10 of title 2 of the National Prohibition Act (41 Statutes, 312; section 8351i of Barnes' Code, 1924 Supp.; U. S. Comp. Statutes, § 10138½e):

"No person shall manufacture, purchase for sale, sell, or transport any liquor without making at the time a permanent record thereof showing in detail the amount and kind of liquor manufactured, purchased, sold, or transported, together with the names and addresses of the persons to whom sold, in case of sale, and the consignor and consignee in case of transportation, and the time and place of such manufacture, sale, or transportation. The commissioner may prescribe the form of such record, which shall at all times be open to inspection as in this act provided."

Section 34 of the same title (Comp. St. Ann. Supp. § 10138½u) provides that the record required by section 10 aforesaid "shall be subject to inspection at any reasonable hour by the commissioner or any of his agents or by any public prosecutor or by any person designated by him." The gray ledger does not contain all of the information called for by section 10 of title 2 of the Prohibition Act, but it contains a more or less complete record of the liquor purchased, a record of the sales from day to day and in some cases the names of the purchasers. Such a book is not like the private papers of a citizen. It is subject to inspection by a number of persons, and the statute requires it to be kept as a permanent record. It is true that the gray ledger contains other matter in addition to that which the statute requires to be kept, but a party who records his affairs in a book subject to inspection cannot complain of the consequent invasion of his privacy.

[7] The Supreme Court has repeatedly held that the private papers of a party are competent evidence against him even in a criminal case. In Adams v. New York, 192 U. S. 585, 24 S. Ct. 372, 48 L. Ed. 575, the court distinguishes Boyd v. U. S. and holds that the vice therein condemned was the compulsory production of papers, not their use after they were lawfully in the possession of representatives of the government. In Perlman v. U. S., 247 U. S. 7, 13, 38 S. Ct. 417, 62 L. Ed. 950, it was contended that defendant's constitutional rights were infringed by the introduction in evidence of some exhibits in a patent suit which were produced by him and left in the registry of the court at the conclusion of the patent litigation. In speaking of Perlman's contention, Mr. Justice McKenna says:

"In other words, he claims the same sanctuary for the exhibits in the hands of the court as though they were in his hands and had never been published or delivered to the world. For this he invokes certain principles and cases. The principles are well established. * * * They preclude,

of course, compulsion, either upon the individual or, under some circumstances, his property; nor is it a condition or part of compulsion that there be an actual entry upon premises, an actual search and seizure. The principles preclude as well the extortion of testimony or detrimental inferences from silence or refusals to testify. The incidences of the cases in which the principles were declared do not help Perlman. In all of them there was force or threats or trespass upon property, some invasion of privacy or governmental extortion. * * * They, as we have said, make the criterion of immunity not the ownership of property but the 'physical or moral compulsion' exerted."

In Stroud v. U. S., 251 U. S. 15, 21, 40 S. Ct. 50, 64 L. Ed. 103, defendant was a prisoner at Leavenworth. He was charged with the murder of a guard. Letters written by him were received in evidence, and he claimed that his constitutional rights were infringed. Mr. Justice Day said:

"In this instance the letters were voluntarily written, no threat or coercion was used to obtain them, nor were they seized without process. They came into the possession of the officials of the penitentiary under established practice, reasonably designed to promote the discipline of the institution. Under such circumstances there was neither testimony required of the accused, nor unreasonable search and seizure in violation of his constitutional rights."

Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159, was decided subsequent to the Gouled Case. McDowell's papers were seized without warrant by his former employers and turned over to the federal authorities, who made them the basis of a criminal prosecution. The seizure included a diary kept by McDowell and containing incriminatory admissions. The government had no part in the unlawful seizure of the papers, and it was held that the government was entitled to use them.

In U. S. v. Wilson (C. C.) 163 F. 338, a trunk check was taken from the defendant at the time of his arrest. This check enabled the authorities to take possession of his trunk, in which they found incriminating papers. Wilson claimed that the use of these papers violated his rights under the Fourth and Fifth Amendments. The court denied his motion for their return. On page 342 of the report the court pertinently asks:

"Do the terms 'compulsory discovery' and 'seizure' refer to more than the exercise of compulsion upon the defendant himself, either during the trial, or while he is under arrest, to compel him to produce, or to furnish information as to, property and papers which are wanted as evidence? * * * Is not the test rather to see if the production has been compelled, than to prohibit the use of everything not voluntarily and knowingly turned over?"

The above case is cited by this court with approval in Sayers v. U. S. (C. C. A.) 2 F. (2d) 146. The case last cited commits this court to the principle that in the case at bar "the arrest of defendant and the search of adjacent rooms and seizure of liquors and papers were a duty, were legal, and were not unreasonable within the import of the Fourth Amendment"; also that the use of papers and books so seized in the trial of a defendant is free from constitutional objection.

The foregoing conclusions find support in a number of recent federal authorities. Baron v. U. S. (C. C. A.) 286 F. 822, 825; Donegan v. U. S. (C. C. A.) 287 F. 641, 649; Browne v. U. S. (C. C. A.) 290 F. 870, 875; and Swan v. U. S., 54 App. D. C. 100, 295 F. 921, 922. The gray ledger was admissible against the defendant Marron who kept it. The ledger is a record of a business conducted from day to day by Birdsall, and the book was in his possession when he was arrested. In the petition for its return, Birdsall asserted ownership of the book. There can be no doubt that the ledger was admissible as against Birdsall. Foster v. U. S., 178 F. 165, 175, 101 C. C. A. 485.

The defendants rely on Kirvin v. U. S. (C. C. A.) 5 F.(2d) 282. It may be conceded that this decision cannot be reconciled with the views above expressed. We have great respect for the court which handed down this opinion, but we prefer to follow our own precedents. We still think that Sayers v. U. S. (C. C. A.) 2 F.(2d) 146, was correctly decided.

It is earnestly argued on behalf of Gorham and Kissane that the ledger was inadmissible as to them.

[8] The jury was warranted in finding from the evidence that all the entries in the gray ledger from and after page 34 were written either by Marron, Birdsall, or E. O. Vaughan. Vaughan is an expert accountant, who was employed by Birdsall to audit the books from month to month. He testified that Birdsall directed him to post in one account all items in the book listed under "Police," "Kissane," and "Gift." Whatever entries were made by Vaughan were made

under the direction of Birdsall. It is elementary that, where there is proof of a conspiracy, the act or declaration of one of the parties thereto in reference to the common object may be given in evidence against the others. Sundry Goods, Wares & Merchandises v. U. S., 2 Pet. 358, 365, 7 L. Ed. 137; Wiborg v. U. S., 163 U. S. 632, 657, 16 S. Ct. 1127, 1197, 41 L. Ed. 289. In Thomas v. U. S., 156 F. 897, 84 C. C. A. 477, 17 L. R. A. (N. S.) 720, it is specifically held that, when there is prima facie evidence of conspiracy, the contents of a book kept by one of the conspirators and bearing on the common unlawful purpose may be used as evidence against the others. Was there, apart from the ledger, prima facie proof of a conspiracy and like proof that Gorham and Kissane were parties to it?

[9] If the condition of the record when the gray ledger was received in evidence did not entitle the government to use it, the error was cured, if the necessary supporting evidence was subsequently produced. De Witt v. U. S. (C. C. A.) 291 F. 995, 1002. The question must therefore be determined in the light of the evidence at the conclusion of the trial.

There was abundant evidence from which the jury was warranted in finding that there was a conspiracy for the unlawful sale of liquor at 1249 Polk street, and that Marron, Birdsall, and Mahoney were parties to it. Marron rented the premises and paid the water, telephone, and electric bills. Birdsall and Mahoney were there from day to day dispensing drinks. The circumstances shown justified the conclusion that those parties had agreed with each other continuously to violate the National Prohibition Act.

The premises were little more than half a block from the Bush Street Police Station. For at least seventeen months, and probably longer, the flat was operated as a saloon, where any one who gave three rings of the bell was admitted. A large business was done. This involved the receipt of considerable liquor from time to time and the coming and going of patrons. The circumstances suggest a corrupt understanding with men in the police force as an indispensable condition to the continued operation of the business.

The defendants Gorham and Kissane were directed by their superiors to keep the premises under watch as a suspected bootlegging joint.

Gorham was sergeant of police, operating from the Bush Street Station during the last seven months the business was carried

on. On the 27th of March, 1924, a complaint was turned over to him "that the premises 1249 Polk street is a bootleg joint." Two days later, he testifies that he visited the flat and found George Birdsall in possession. He had known Birdsall for twenty years, and knew that during nearly all that time Birdsall had been a bartender. He testified that Birdsall refused to permit him to search the premises without a warrant. Gorham reported under date of April 1, 1924, that the flat was occupied by George Birdsall as his residence. There was other evidence that Birdsall lived at 519 Belvedere street, and that the flat on Polk street contained no sleeping accommodations. Gorham testified with great positiveness that he was never able to gain admittance to the flat. The witness Latham subsequently testified that he saw Gorham in the flat in September, 1924, and that Gorham saw Latham take a drink of gin. Gorham's testimony and his reports to his superiors were to the effect that he had the flat under observation and would proceed criminally as soon as he could secure evidence.

[10, 11] Latham's testimony was received in rebuttal, and error is predicated thereon. The testimony controverted Gorham's statement that he was unable to secure admission to the flat. It was therefore proper rebuttal. It is also to be said that the order of proof is in the discretion of the trial court, and it is not ordinarily error to receive in rebuttal testimony which ought to have been offered as a part of the case in chief. Goldsby v. U. S., 160 U. S. 70, 74, 16 S. Ct. 216, 40 L. Ed. 343; Seebach v. U. S. (C. C. A.) 262 F. 885, 887, 888; U. S. v. Heitler (D. C.) 274 F. 401, 406.

Kissane was the policeman on the beat during the years 1923 and 1924. Kissane testified that he suspected that the flat in question was being used for bootlegging purposes while Hawkins was in charge. March 3, 1924, Kissane's attention was called by his superiors to a report that liquor was being sold on the premises. Under date of March 30 he reported that he had been through all of the rooms and found no evidence of liquor there. In a subsequent report and also on the witness stand he stated that he visited the premises about twice a week and never saw any evidence of bootlegging. The jury must have concluded from the testimony of other witnesses that the flat was fitted up with all the facilities for the sale of liquor. Kissane testified that Mahoney told him he was working there, and, when asked what he was doing, Ma-

honey replied, "Bartender." Kissane admitted on cross-examination that he saw a dozen whisky glasses, a number of empty wine bottles, and an empty gin bottle. He made no report of any of these facts. The jury was warranted in drawing an unfavorable inference from the shifty and contradictory testimony of the defendant Kissane.

[12] The court did not err in holding that there was prima' facie evidence that Gorham and Kissane were parties to the conspiracy. The entries made by Marron in the gray ledger were admissible as evidence against them.

[13] At the conclusion of the case in chief Gorham and Kissane moved the court for a directed verdict. By offering evidence thereafter, these defendants waived this motion. Simkins on Federal Practice, 109; Youngblood v. U. S. (C. C. A.) 266 F. 795, 796; Pennsylvania Co. v. Clark (C. C. A.) 266 F. 182; Woodstock Corporation v. Young (C. C. A.) 268 F. 279.

[14] The motion was renewed at the conclusion of the testimony and in our opinion it was properly denied.

"A preconcerted plan to do an unlawful act must from the nature of the case be usually established by inferences drawn from the relation of the parties from the acts done and from the results achieved." Thomas v. U. S., 156 F. 897, 910, 84 C. C. A. 477, 490 (17 L. R. A. [N. S.] 720).

"If the evidence shows a detail of facts and circumstances in which the alleged conspirators are involved, separately or collectively, and which are clearly referable to a preconcert of the actors and there is a moral probability that they would not have occurred as they did without such preconcert, that is sufficient, if it satisfies the jury of the conspiracy beyond a reasonable doubt." Davis v. U. S., 107 F. 753, 755, 46 C. C. A. 619, 622.

The evidence against Gorham and Kissane was sufficient to take the case to the jury, and it was for the jury to say whether it satisfied them beyond a reasonable doubt.

The defendants Gorham and Kissane moved in arrest of judgment on the ground that the facts stated in the indictment do not charge a crime as against these defendants. After alleging in great particularity a conspiracy of the defendants to violate a number of the provisions of the prohibition statute, the indictment sets up eleven overt acts alleged to have taken place in furtherance of the conspiracy. The seventh of these acts is the receipt by Kissane of $5 and the eighth the receipt by Gorham of $90. The indictment charges that these moneys were paid by Birdsall to these defendants as police officers. It is argued that there is no statute forbidding the receipt of money by a police officer and that the seventh and eighth overt acts are therefore innocent.

[15, 16] "There is no rule of law which requires an overt act to be an unlawful act." Rumely v. U. S. (C. C. A.) 293 F. 532, 550; U. S. v. Rabinowich, 238 U. S. 78, 85, 35 S. Ct 682, 59 L. Ed. 1211; Rudner v. U. S. (C. C. A.) 281 F. 516, 518; Vannata v. U. S. (C. C. A.) 289 F. 424, 426. Nor is it essential that the indictment should show a necessary or logical relation of the overt act to the conspiracy. It is sufficient if the indictment charges that the act had for its purpose the furtherance of the unlawful scheme. Houston v. U. S., 217 F. 852, 133 C. C. A. 562. The elimination of the seventh and eighth overt acts would leave the indictment good as against Gorham and Kissane. The indictment sufficiently charges a conspiracy to which they were parties, and it sets up a number of overt acts in furtherance of the conspiracy. It was not necessary to charge these defendants with any overt act. If any party to the conspiracy performed an overt act in furtherance of it, the crime was complete. U. S. Comp. Stat. § 10201; 35 Stat. 1096. The indictment is sufficient, and the motions in arrest were properly denied. Rudner v. U. S. (C. C. A.) 281 F. 516, 518.

[17] The defendant Kissane requested instructions defining the limitations upon his power to arrest for crime. These instructions were properly refused. Kissane was not charged with failure to arrest criminals, and the jury was clearly instructed that he and Gorham could not be convicted on proof merely that they had been derelict in their duty as peace officers. There is no error as against the defendants Gorham and Kissane.

On the 26th of August, 1924, Robert A. Coulter, captain of police, and Officer Hicks, entered the premises located at 3047 California street, San Francisco, ostensibly for the purpose of making a sanitary inspection. Coulter admitted on the stand that the sanitary inspection was a mere subterfuge to secure an entrance to the premises. They found in the garage a large quantity of liquor belonging to the defendant Marron. They summoned the federal prohibition officers, who seized the liquor and testified at the trial to the circumstances under which it was secured. No one had a warrant for this seizure, nor was any one arrested at the time the liquor was taken. Prior to the

trial, Marron petitioned the court to suppress this evidence, and he reserved his objection and exception to the evidence when it was received at the trial.

On the 3d of September, 1924, under identical circumstances, liquor belonging to Marron was seized at 2922 Sacramento street, San Francisco. Police Officer Hicks secured admission to the premises for the purpose of making a sanitary inspection. He admitted on cross-examination that this was a subterfuge. He found liquor and notified the federal prohibition officers. They seized the liquor, and offered testimony at the trial as to the circumstances of the seizure and the alcoholic content of the liquor. Marron petitioned prior to the trial for the suppression of the evidence and reserved his objection and exception when the evidence was received. There was no warrant for the search of 2922 Sacramento street, and no one was arrested when the liquor was seized.

[18, 19] The Fourth Amendment to the federal Constitution is no limitation on the authority of state officers. If the police had seized the liquor at 3047 California street and 2922 Sacramento street and the federal officers had had no part in the transaction the testimony with reference to the raid would have been admissible. Weeks v. U. S., 232 U. S. 383, 398, 34 S. Ct. 341, 58 L. Ed. 652; Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159. But in this case the liquors were seized by the federal prohibition agents; the police secured admission to the premises by a subterfuge which cannot be defended and then summoned the federal officers. There was such an association of the federal officers with the wrongful search and seizure as brings the case within the operation of the Fourth Amendment. U. S. v. Falloco (D. C.) 277 F. 75; Legman v. U. S. (C. C. A.) 295 F. 474; In re Schuetze (D. C.) 299 F. 827.

[20] The record shows that the District Court in admitting the evidence was influenced by the decision of this court in Forni v. U. S. (C. C. A.) 3 F.(2d) 354. In that case the liquors were seized under a search warrant, and the question litigated was the validity of the warrant. It was held that the warrant was properly issued. The facts in the possession of the police would have entitled them to a warrant for the search of 3047 California street, but it does not follow that the premises could be lawfully searched without a warrant.

In Carroll v. U. S., decided by the Supreme Court March 2, 1925, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, Mr. Chief Justice Taft says: "In cases where the securing of a warrant is reasonably practicable, it must be used."

On the authority of Gouled v. U. S., 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647, and Amos v. U. S., 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654, we are obliged to hold that the admission of this evidence was error prejudicial to the defendant Marron. It did not harm the other defendants.

[21] Some question is made about the seizure of liquor on April 24, 1925, at Marron's home, 2031 Steiner street. This liquor was seized under a warrant properly issued, and the only question raised was the relevancy of the evidence to this conspiracy. It was the contention of the government that, shortly after the date of this seizure, Marron made arrangements with the defendant Brand to co-operate with him in running the establishment at 1249 Polk street. The fact that Marron was well stocked with liquor at this time was a circumstance which the jury had a right to consider.

There are numerous additional assignments of error on behalf of the defendants Marron and Birdsall, but they are not mentioned in their briefs. The instructions given were fair to the defendants.

The judgment is affirmed as to Birdsall, Gorham, and Kissane. It is reversed as to Marron, with directions to grant him a new trial.